591 A.2d 896

**Payge R. WILLIS**

v.

**ALLSTATE INSURANCE COMPANY.**

**No. 1559, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

July 1, 1991.

**22**

Daniel P. Barrera (Bruce B. McHale and Chamowitz & Chamowitz, P.C., on the brief), Alexandria, Va., for appellant.

Thomas Patrick Ryan (McCarthy, Wilson & Ethridge, on the brief), Rockville, for appellee.

Argued before GARRITY, ALPERT and CATHELL, JJ.

ALPERT, Judge.

This case involves an appeal from a declaratory judgment action brought in the Circuit Court for Prince George's County by appellee, Allstate Insurance Company ("Allstate"), to determine whether Allstate owed liability and medical payments coverage under a homeowner's liability policy issued to the insureds, Donald and Racquel Bywater ("the Bywaters"). Allstate brought the action after appellant, Payge Willis ("Willis"), the Bywaters's daughter and the personal representative of the estate of Amanda Willis ("Amanda"), filed a wrongful death and survival suit[1]

---

1. The wrongful death and survival suit, styled CAL–09078, has been continued pending this appeal's outcome.

against the Bywaters subsequent to the drowning of Amanda Willis, Payge Willis's daughter and the Bywaters's granddaughter, in the Bywaters's pool. Payge Willis and her children had been living with the Bywaters at the time.

After the Circuit Court for Prince George's County (the Honorable G.R. Hovey Johnson, presiding) held a hearing on the motion for summary judgment filed by Allstate, and the cross motions for summary judgment filed by Willis and the Bywaters, the court granted summary judgment in favor of Allstate. The court held that Amanda Willis had been a "resident relative" of the Bywaters on the date of her death, thus precluding family liability or guest medical payments coverage under the Bywaters's insurance policy for any claims arising from the child's death. Willis then noted this appeal, in which we are asked to consider:

I. As this is a case of first impression, what standards should this court apply in determining the issue of residency in the context of a homeowner's liability policy?

II. Whether the term "resident" as set forth in the homeowner's insurance policy at issue, and applied to the factual circumstances of this case, is ambiguous, thereby mandating a narrow construction of the exclusionary clause exempting "resident relatives" from coverage under the Bywaters's homeowner's insurance policy.

III. Whether the trial court committed reversible error in resolving the factual issue of residency by summary judgment.

## FACTS AND PROCEEDINGS

The accidental death of three-year-old Amanda Willis occurred on June 19, 1986, when Amanda drowned in her grandparents' (the Bywaters) pool. Payge Willis alleged in her wrongful death and survival suit complaint that Amanda had gained access to the pool through a broken/open gate, whereupon she had slipped and/or fallen into the pool, and drowned.

At the time of Amanda's death, Willis was living with Amanda and her two other children, Carrie and Paul III, at her parents' home at 4315 40th Street, in Brentwood, Maryland. Previously, Willis, her three children, and her husband, Paul Willis, Jr., had been living in Cleveland, Ohio, for a period of approximately five years. In early 1986 certain calamitous developments prompted her to relocate to the Washington metropolitan area, so that she could be closer to her family.

In mid-April of 1986, Willis moved from Cleveland to stay with her parents at their Brentwood, Maryland home. According to Willis, it was clear to her and her parents that she and her children would be temporary guests at the Bywaters's home, until she could find a job and secure a separate residence for her and her children. She brought all of her personal belongings with her, but stored most of her furniture in a U–Haul facility in Hyattsville, Maryland.

Sometime in May of 1986, Willis began a part-time job as a housekeeper for the Providence Hospital in Washington, D.C., earning $182.40 every two weeks. Due to her limited salary, Willis had been unable to find an affordable apartment prior to her daughter's death. She had been interested in one apartment, on Bunkerhill Road in Brentwood, which was managed by friends of her parents, but had not made any arrangements in regard to its rental.

While living with the Bywaters, Willis contributed fifty dollars every two weeks for boarding expenses; all other expenses were paid by her parents. Racquel Bywater cooked all the meals and took care of Willis's children when Willis was at work. Willis's parents knew that she was looking for a place to live, but realized that finding one would be difficult because she was only working part-time. Accordingly, they placed no time constraints on her stay with them.

At the time of Amanda's drowning, the Bywaters were insured by Allstate under a homeowner's liability policy that provided family liability and guest medical protection.

The family liability provision of the policy specifically excluded "bodily injury to an insured person"; [2] the guest medical protection provision specifically excluded "bodily injury to any insured person or regular resident of the insured premises."

On June 1, 1989, Payge Willis filed a wrongful death and survival suit against her parents. The Bywaters then filed a claim against Allstate, seeking defense and indemnification for the claims arising from the suit. In response, Allstate filed a Complaint for Declaratory Relief seeking a determination that no coverage was afforded under the policy for the liability and medical payments benefits claims that had been made, because Amanda Willis was a "resident relative." From an adverse ruling in favor of Allstate, Willis noted this appeal.

## THE LAW

### *Propriety of the Grant of Summary Judgment*

After a hearing was held on the parties' motions for summary judgment, Allstate's motion was granted, precluding liability for the drowning, because the court determined that Amanda Willis had been a "resident relative" of the Bywaters's household. Appellant insists that the grant of summary judgment was inappropriate because material issues of fact existed that warranted a trial on the merits.

■ The purpose of the summary judgment proceeding is "to determine whether there exists a factual controversy requiring a trial." *Foy v. Prudential Ins. Co.*, 316 Md. 418, 422, 559 A.2d 371 (1989). The proponent of the motion bears the burden of demonstrating that there is no genuine dispute as to the material facts. *See Lowman v. Consolidated Rail Corp.*, 68 Md.App. 64, 69, 509 A.2d 1239 (1986).

---

**2.** The policy defines "insured person" to "mean [ ] you and, if a resident of your household: a) any relative; and b) any dependent person in your care." "You" or "your" is defined by the policy as "the person named on the declarations page as the insured and that person's resident spouse."

Judgment is to be entered in the moving party's favor if the party convinces the court "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608 (1985). Under Maryland Rule 2–501, when an appellate court reviews the propriety of a trial court's grant of a summary judgment motion, it "must first determine whether there is a genuine dispute as to any material fact, and if not, whether the party requesting the summary judgment to be entered in its favor is entitled to judgment as a matter of law." *Miller v. Nissen Corp.*, 83 Md.App. 448, 458, 575 A.2d 758 (1990), *cert. granted*, 321 Md. 225, 582 A.2d 531 (1991). All inferences are resolved against the motion's proponent, and if there is a choice between inferences, then summary judgment is improper. *See King*, 303 Md. at 111, 492 A.2d 608. With these concepts in mind, we turn to the case *sub judice*.

Initially on appeal, appellant contended that material issues of fact existed that precluded summary judgment. This contention is unsubstantiated. We first note that appellant (as well as the Bywaters) acknowledged in her cross-motion for summary judgment that there was "no genuine dispute as to any material fact." Further, at the motions hearing, she reiterated that there were "no material facts in dispute." At oral argument, appellant's counsel agreed that there was no factual dispute and that the issue could be decided as a matter of law. Our review of the record reflects no dispute as to any of the facts material to a determination of Amanda Willis's residency at the time of her drowning. Indeed, the activities of the Willises during the period preceding the drowning, on which Allstate relies in order to show that Amanda Willis was a resident of the Bywaters's household, are chronicled in Payge Willis's own affidavit and deposition, as well as that of her parents. Appellant even acknowledges in her brief that "all of the facts to support [Allstate's] motion came from Payge Willis or the Bywaters."

*Determination of "Resident Relative" Status*

■ Having determined that there was no genuine dispute as to material fact, we shall examine whether the trial court correctly ruled, as a matter of law, that Amanda Willis was a "resident relative." We do so in accord with the principle that "[w]hen the facts are essentially undisputed, whether these facts fit within the policy definition is a question of law that may be decided on appellate review." *Trezza v. State Farm Mut. Auto. Ins. Co.*, 519 So.2d 649, 650 (Fla.Dist.Ct.App.1988).

It is widely held that the question of residence presents a mixed question of law and fact. *See, e.g., Aetna Life and Casualty Co. v. Carrera*, 577 A.2d 980, 985 (R.I.1990); *Trezza*, 519 So.2d at 650; *State Farm Mut. Auto. Ins. Co. v. Gazaway*, 152 Ga.App. 716, 263 S.E.2d 693, 695 (1980); *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 364 So.2d 215, 218 (La.App.1979). But,

> [o]nce all the facts are marshaled, and it is made to appear that the marshaled facts are without dispute, then the ultimate conclusion as to residency becomes a question of law, i.e., whether such facts disclose residency of a particular place as a matter of law and within the meaning of the policy of insurance in question.

*Hamilton*, 364 So.2d at 218.

The policy in this case excluded injury to a "resident of [the insured's] household." These words, or words of similar substance, form the exclusionary clauses that occasionally are used in liability insurance policies. *Couch on Insurance* 2d (Rev. ed.) § 44A:92, at 127–28 (1981).

> It is well established that a provision exempting a compensation insurer from liability for injuries to persons living on the insured's premises or members of his household is valid, on the basis that it prevents collusion between an injured person and blood relatives or members of insured's household.

*Id.*

The prevailing law in Maryland regarding the interpretation of the word "resident" in an exclusionary clause of an

insurance policy is found in *Peninsula Ins. Co. v. Knight,* 254 Md. 461, 255 A.2d 55 (1969). In *Peninsula Ins. Co.,* the Court of Appeals construed an exclusionary clause that denied coverage to Knight, the insured, "because the claims against him arose out of bodily injury to persons 'related to [him] by blood or marriage and * * * [who are] resident[s] of the same household'" as Knight. *Id.* at 463, 255 A.2d 55.

Preliminarily, the Court cited the policy reason, enumerated above, for upholding such clauses. *Id.* at 467, 255 A.2d 55. After determining that the expression "resident of the same household" was not ambiguous—and therefore, that it was not necessary to construe the policy in the insured's favor, *see id.* at 477, 255 A.2d 55—the Court then found that under the totality of the circumstances, Knight *was* a resident of his parents' household, thus precluding liability for the insurer. *Id.* at 478, 255 A.2d 55. The court based its determination of residency on a number of reasons, including: the abandonment of his previous residence with no intent to return there; the removal of all possessions from there; the storage of furniture and appliances in the alleged residence; the shared usage of the common areas of the house; the contribution of a small weekly sum to help with the grocery bills; the shared family meals; and the fact that Knight's father was the head of the household, which consisted of Knight, his wife and children, and his mother and his four siblings. *Id.* Finally, because the insured was not a resident elsewhere, the fact that he was living in his parents' home meant that he was a resident there. *Id.*

The facts in the instant case are quite similar to those in *Peninsula Ins. Co.* and likewise support a determination of residency. Willis abandoned her home in Cleveland, relocating to Washington with no intention to return to her prior residence. She brought all her personal possessions with her. Some of the appliances—such as her washer and dryer—were moved into her parents' home; the rest of her appliances and her furniture was placed in storage. Al-

though she contributed what she could to the household expenses—fifty dollars—this could not have covered the full cost of room and board. Clearly, her father was the head of the household, supporting her and her children. They all lived in a close, family environment, sharing the meals that her mother cooked. She may well have intended to find another place to live, but at the time of the accident, her limited income made this an impossibility. Her parents recognized this, and were allowing her to remain at their home for an indefinite time.

We reject appellant's insistence that *Peninsula Ins. Co.* is inapplicable precedent, making this a case of first impression. Appellant argues that in the interval since the *Peninsula Ins. Co.* decision, Maryland courts have come to consider the household exclusionary clause "to be invalid, unenforceable, and in violation of public policy." This reading of Maryland law is erroneous. As correctly noted by appellee, Maryland courts have determined that "[t]he 'household exclusion' violates public policy only to the extent it operates to prevent [the] mandatory minimum coverage" required by the Maryland Financial Responsibility Law, a motor vehicle-related statute. *State Farm Mut. Auto. Ins. Co. v. Nationwide Mut. Ins. Co.*, 307 Md. 631, 637 (1986); *see also Walther v. Allstate Ins. Co.*, 83 Md.App. 405, 408, 575 A.2d 339 (1990).

Appellant further insists that *Peninsula Ins. Co.* is inapplicable because it fails to set standards for determination of residency. We perceive that *Peninsula Ins. Co.* adequately sets out criteria by which to judge residency, *i.e.*, the abandonment of a prior residence, close familial ties, the dwelling of the family under one roof with shared enjoyment of the living facilities, and the alleged resident being supported by the head of the household. These factors are among those established by courts in other jurisdictions. *See, e.g., General Guar. Ins. Co. v. Broxsie*, 239 So.2d 595, 597 (Fla.Dist.Ct.App.1970) (citing three "ingredients" that constitute a household: "(1) close ties of kinship; (2) a fixed

dwelling unit; and (3) enjoyment of each part of the living facilities").

Appellant argues, however, that *intent* should be factored into a determination of residency. Appellant repeatedly emphasizes that she had no intention to remain at her parents' home permanently. The implication is that this lack of intent should serve to preclude "resident relative" status. The Court in *Peninsula Ins. Co.*, however, implicitly rejected the consideration of whether there was any intent to permanently establish residence. As the Court stated: "A 'resident' of a household may have a status ranging from temporary to permanent but, as we see it, he is nonetheless a resident." *Peninsula Ins. Co.*, 254 Md. at 477, 255 A.2d 55.

Having found the reasoning in *Peninsula Ins. Co.* to be controlling, we hold that the trial court correctly found that, as a matter of law, Amanda Willis was a "resident relative." Summary judgment therefore was proper. *See King*, 303 Md. at 111, 492 A.2d 608.

### Alleged Ambiguity of the Term "Resident"

Appellant further insists that the term "resident" in the homeowner's insurance policy, as applied to the facts of this case, is ambiguous, and thus mandates a narrow construction of the exclusionary clause exempting resident relatives from coverage under the policy.

It is a well-settled principle in Maryland law that courts are to give words their normal and customary meaning when interpreting insurance contracts. *See Gov't Employees Ins. Co. v. DeJames*, 256 Md. 717, 720, 261 A.2d 747 (1970). Maryland, unlike many other jurisdictions, has not adopted the rule that the provisions of an insurance policy are to be most strongly construed against the insurer. *See Mateer v. Reliance Ins. Co.*, 247 Md. 643, 648, 233 A.2d 797 (1967). Such favor is accorded the insured only when there is an ambiguity present. *See Gov't Employees Ins. Co.*, 256 Md. at 720, 233 A.2d 797. When the language of the

insurance policy is unambiguous, construction of the policy is determined by the court, but if the contractual language is ambiguous, "construction is for the trier of fact and the ambiguity is to be resolved against the company which prepared the policy and in favor of the insured." *Schuler v. Erie Ins. Exchange,* 81 Md.App. 499, 506, 568 A.2d 873 (1990).

The alleged ambiguity in this case is the word "resident" in the phrase "resident of your household." The lack of ambiguity in the word "resident" in similar phrases in insurance policies has been determined by courts in many jurisdictions. In *Griffith v. Sec. Ins. Co. of Hartford,* 167 Conn. 450, 356 A.2d 94 (1975), the court stated:

> No persuasive argument or legal authority has been submitted for the proposition that the controlling words of the policy "resident of the same household," are ambiguous. The Supreme Courts of Hawaii and Minnesota, in considering the same provisions in insurance policies, have concluded that the words are not ambiguous, and we agree with their conclusions.

*Id.* 356 A.2d at 96; *see also Farmers Ins. Co. of Arizona v. Oliver,* 741 P.2d 307, 310–311 (Ct.App.1987) ("resident of the household"); *Firemen's Ins. Co. of Newark, New Jersey v. Viktora,* 318 N.W.2d 704, 706 (Minn.1982) ("residents of the Named Insured's household"); *Puente v. Arroyo,* 366 So.2d 857, 858 (Fla.Dist.Ct.App.1979) ("residents of the named insured's household"); *Pamperin v. Milwaukee Mut. Ins. Co.,* 55 Wis.2d 27, 197 N.W.2d 783, 789 (1972) ("resident or member of the same household"); *Stadelmann v. Glen Falls Ins. Co. of Glen Falls,* 5 Mich.App. 536, 147 N.W.2d 460, 463 (1967) ("resident[ ] of [the insured's] household"). *But see General Guar. Ins. Co.,* 239 So.2d at 597.

Maryland follows the pattern established by these jurisdictions. In *Peninsula Ins. Co.,* the Court of Appeals considered whether the phrase "resident of the same household" was ambiguous. The court held that "[t]he words themselves are clear, simple and in general use. Put to-

gether they express a simple, homely, familiar concept."
*Peninsula Ins. Co.*, 254 Md. at 477, 255 A.2d 55. And, in
*Hicks v. Hatem*, 265 Md. 260, 289 A.2d 325 (1972), the Court
noted that the phrase "any member of the family of the
insured residing in the same household as the insured" did
not present the court "with a situation in which the use of
an ambiguous term would require the construction of the
policy against the company preparing it." *Id.* at 265, 289
A.2d 325.

In light of the foregoing, we reject appellant's contention
that the alleged ambiguity inherent in the word "resident"
must be resolved in her favor. Having concluded that
summary judgment was proper, we affirm the judgment of
the trial court.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY AP-
PELLANT.