820 A.2d 628

ABC IMAGING OF WASHINGTON, INC.,°

v.

THE TRAVELERS INDEMNITY COMPANY
OF AMERICA, et al.

No. 476, Sept. Term, 2002.

Court of Special Appeals of Maryland.

March 31, 2003.

Phillip L. Felts (Schuman & Felts, Chtd., on the brief), Bethesda, for appellant.

Constantinos G. Panagopoulos (F. Joseph Nealon, Kirsten E. Keating, Marina K. Bowsher and Ballard, Spahr, Andrews & Ingersoll, LLP, on the brief), Washington, DC, for appellees.

Argued before KRAUSER, SHARER and PAUL E. ALPERT (Retired, specially assigned), JJ.

SHARER, Judge.

In this appeal we are called upon to consider the language of a coverage exclusion in a fidelity bond. The Circuit Court for Prince George's County granted summary judgment in favor of the insurer, from which the insured has noted this appeal.

The insured, ABC Imaging of Washington, Inc. ("ABC Imaging"), appellant, filed a lawsuit against the insurer, The Travelers Indemnity Company of America ("Travelers"), appellee, after its claim under a fidelity bond was denied. In its complaint, ABC Imaging alleged breach of contract, unfair claim practices violations, and misrepresentation. ABC Imaging had made a timely claim for a loss incurred when one of its employees was substantially overpaid (by $52,432.32) during several payroll periods and declined to return or otherwise account for the money.[1]

ABC Imaging and Travelers filed cross-motions for summary judgment. Both parties agree that there is no dispute of material fact and that disposition by way of summary judgment was appropriate. After a hearing, the motions judge entered summary judgment in favor of Travelers on each of ABC Imaging's claims. ABC Imaging noted this timely appeal, asking:

> Did the circuit court err in granting summary judgment in favor of Travelers?

We answer in the negative and affirm.

## FACTUAL and PROCEDURAL BACKGROUND

ABC Imaging is a District of Columbia business engaged in printing, blueprinting, and graphics in the Washington area.

---

1. ABC Imaging also sued its former employee, Darrell Miller, for theft/embezzlement. Miller, however, did not enter an appearance in the case and the motions judge entered summary judgment in favor of ABC Imaging. That ruling is not involved in this appeal.

Travelers provided a business insurance policy to ABC Imaging, the coverage of which included a fidelity bond insuring against loss resulting from employee dishonesty.

On November 17, 2000, ABC Imaging hired one Darrell Miller as an assistant department manager at its main office in Washington, D.C., at an annual salary of $29,000, or $558 per week. As a result of a data entry error, a clerk at ABC Imaging entered Miller's weekly pay rate rather than his hourly pay rate in records that were used by an outside source to generate paychecks for ABC Imaging employees. Thus, between November 20, 2000, and January 7, 2001, the six week period in which he was employed by ABC Imaging, Miller received and cashed paychecks totaling $54,832.32, or $52,432.32 more than he was entitled to receive.

When ABC Imaging discovered the error on January 7, 2001, management confronted Miller about the matter, whereupon Miller ran from the premises, never to return. On January 8, 2001, ABC Imaging's attorney sent correspondence to Miller demanding return of the overpaid funds. Miller neither responded nor returned the money.

On February 12, 2001, ABC Imaging submitted a proof of claim to Travelers as required by the policy. By letter dated April 9, 2001, Travelers denied the claim, asserting that the manner by which the funds came into Miller's possession fell within the "salary" exclusion of the policy.

ABC Imaging's complaint in the circuit court followed.

### DISCUSSION

ABC Imaging contends that the motions judge erred in finding that its loss was excluded from coverage under the policy and, on that basis, granting summary judgment in favor of Travelers.

Our review of a grant of summary judgment is as follows:

The trial court properly grants summary judgment in accordance with Maryland Rule 2–501(e), "if the motion and response show that there is no genuine dispute as to any

material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." *Jones v. Mid–Atlantic Funding Co.,* 362 Md. 661, 675–76, 766 A.2d 617, 624–25 (2001); *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.,* 335 Md. 135, 144, 642 A.2d 219, 224 (1994); *Gross v. Sussex, Inc.,* 332 Md. 247, 255, 630 A.2d 1156, 1160 (1993). This Court, like any appellate court, reviews the grant of summary judgment to determine whether the trial court was legally correct in entering the judgment. *Murphy v. Merzbacher,* 346 Md. 525, 530–31, 697 A.2d 861, 864 (1997); *Goodwich v. Sinai Hosp., Inc.,* 343 Md. 185, 204, 680 A.2d 1067, 1076 (1996); *Hartford Ins. Co.,* 335 Md. at 144, 642 A.2d at 224; *Gross,* 332 Md. at 255, 630 A.2d at 1160. And, because an appellate court has [" ']the same information from the record and decide[s] the same issues of law as the trial court,' " its review of an order granting summary judgment is de novo. *Green v. H & R Block, Inc.,* 355 Md. 488, 502, 735 A.2d 1039, 1047 (1999) (quoting *Heat & Power v. Air Products & Chemicals, Inc.,* 320 Md. 584, 591–92, 578 A.2d 1202, 1206 (1990)).

*Tyma v. Montgomery County,* 369 Md. 497, 503–04, 801 A.2d 148 (2002).

### The Policy Exclusion

■ The fidelity bond provisions of the policy written by Travelers and issued to ABC Imaging contained the following exclusion:

### G. Property Definitions

1. a. **"Employee(s)"** means:

   (1) Any natural person:

   (a) While in your service (and for 30 days after termination of service); and

   (b) Whom you compensate directly by salary, wages or commissions; and

   (c) Whom you have the right to direct and control while performing service for you....

* * *

2. **"Employee Dishonesty"** means only dishonest acts, including "forgery" or extortion, committed by an "employee," whether identified or not, acting alone or in collusion with other persons, except you or a partner, with the manifest intent to:

a. Cause you to sustain loss; and also

b. Obtain financial benefit (*other than salaries*, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

(1) The "employee"; or

(2) Any person or organization intended by the "employee" to receive that benefit.

(Emphasis added).

The "salary and benefits" exclusion has been standard in fidelity bonds since 1980. Prior to that time, similar language was frequently added to policies by rider.

Our research reveals that the rationale for the standard exclusion is two-fold. The exclusion avoids the involvement of insurers in employer—employee disputes about entitlement to salary, commissions, or benefits, for in all such cases the conduct of the employee is within the internal control of the insured employer.

The other aspect of the rationale is also industry driven, and was a response to a trend in court decisions that expanded the coverage beyond the limit intended by insurers. *See* Jane Landes Foster, Jeffrey A. Lutsky and Daniel T. Fitch, *Does a Criminal Conviction Equal Dishonesty? Criminal Intent Versus Manifest Intent*, 24 TORTS & INS. L.J. 785, 800–02 (1989). Since the introduction of the standard exclusion, as we shall discuss, *infra*, most courts have taken a more restrictive view of the type of employee dishonesty that is covered by the fidelity bond.

There are two prongs to the proof required in order for an insured to recover for employee dishonesty under the policy written by Travelers. First, there must be proof of the

employee's "manifest intent" to cause loss to the employer **and** second, that the employee, by his dishonest actions, did obtain a benefit for himself "other than salaries, etc." There is no question that Miller's acts were "dishonest" and done with the intent to confer a benefit upon himself. Because there is no evidence that Miller acted with intent to cause loss to ABC Imaging (in fact, the parties concede that his conduct was indicative of the intent to enrich himself, not to harm his employer), our focus will of necessity be upon the second prong—whether the benefits obtained by him were, or were not, salary, as defined by the policy language.

An insurance policy is a contract between the insurer and the insured. In construing an insurance contract, we look to the rulings of this Court and the Court of Appeals, which, in *Kendall v. Nationwide Insur. Co.*, 348 Md. 157, 702 A.2d 767 (1997), declared:

An insurance policy is a contract between the parties, the benefits and obligations of which are defined by the terms of the policy. We have repeatedly held that the construction of insurance contracts in Maryland is confined to the few well-established principles that are applied to the construction of contracts generally. *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486, 488 (1985). "An insurance contract, like any other contract, is measured by its terms unless a statute, a regulation, or public policy is violated thereby." *Id.* at 388, 488 A.2d 486....

"Under Maryland law, when deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself." *Bausch & Lomb v. Utica Mutual*, 330 Md. 758, 779, 625 A.2d 1021, 1031 (1993). As we clearly held in *Cheney v. Bell National Life*, 315 Md. 761, 766, 556 A.2d 1135, 1138 (1989), "Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer. Rather, following the rule applicable to the construction of contracts generally, we

hold that the intention of the parties is to be ascertained if reasonably possible from the policy as a whole."
*Kendall, supra,* 348 Md. at 165–66, 702 A.2d 767.

The interpretation of a written contract is ordinarily a question of law for the court and, therefore, is subject to *de novo* review by an appellate court. *Auction & Estate Reps., Inc. v. Ashton,* 354 Md. 333, 341, 731 A.2d 441, 445 (1999); *Calomiris v. Woods,* 353 Md. 425, 434, 727 A.2d 358, 362 (1999); *Kendall v. Nationwide Ins. Co.,* 348 Md. 157, 170–71, 702 A.2d 767, 773 (1997); *JBG/Twinbrook Metro Ltd. Partnership v. Wheeler,* 346 Md. 601, 625, 697 A.2d 898, 911 (1997); *Suburban Hosp., Inc. v. Dwiggins,* 324 Md. 294, 306, 596 A.2d 1069, 1075 (1991). In determining the meaning of contractual language, Maryland courts have long adhered to the principle of the objective interpretation of contracts. *Ashton,* 354 Md. at 340, 731 A.2d at 444; *Calomiris,* 353 Md. at 435, 727 A.2d at 363; *Adloo v. H.T. Brown Real Estate, Inc.,* 344 Md. 254, 266, 686 A.2d 298, 304 (1996); *Maryland v. Attman/Glazer P.B. Co.,* 323 Md. 592, 604, 594 A.2d 138, 144 (1991); *Cloverland Farms Dairy, Inc. v. Fry,* 322 Md. 367, 373, 587 A.2d 527, 530 (1991); *Feick v. Thrutchley,* 322 Md. 111, 114, 586 A.2d 3, 4 (1991); *Aetna Cas. & Sur. Co. v. Insurance Comm'r,* 293 Md. 409, 420, 445 A.2d 14, 19 (1982). Under the objective interpretation principle, where the language employed in a contract is unambiguous, a court shall give effect to its plain meaning and there is no need for further construction by the court. *Ashton,* 354 Md. at 340, 731 A.2d at 444; *Wheeler,* 346 Md. at 625, 697 A.2d at 911; *Insurance Comm'r,* 293 Md. at 420, 445 A.2d at 19. "If a written contract is susceptible of a clear, unambiguous and definite understanding . . . its construction is for the court to determine." *Rothman v. Silver,* 245 Md. 292, 296, 226 A.2d 308, 310 (1967).

Further, "[t]he clear and unambiguous language of an agreement will not give way to what the parties thought the agreement meant or was intended to mean." *Ashton,* 354 Md. at 340, 731 A.2d at 444 (citing *Adloo,* 344 Md. at 266, 686 A.2d at 304; *General Motors Acceptance Corp. v. Dan-*

*iels,* 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985); *Board of Trustees v. Sherman,* 280 Md. 373, 380, 373 A.2d 626, 629 (1977)). *See also Beckenheimer's Inc. v. Alameda Assocs. Ltd. Partnership,* 327 Md. 536, 547, 611 A.2d 105, 110 (1992) ("A party's intention will be held to be what a reasonable person in the position of the other party would conclude the manifestations to mean"). The words employed in the contract are to be given their ordinary and usual meaning, in light of the context within which they are employed. *Kasten Constr. Co. v. Rod Enters. Inc.,* 268 Md. 318, 329, 301 A.2d 12, 18 (1973); *Liller v. Logsdon,* 261 Md. 367, 370, 275 A.2d 469, 470–71 (1971); *Belmont Clothes, Inc. v. Pleet,* 229 Md. 462, 467, 184 A.2d 731, 734 (1962); *ST Sys. Corp. v. Maryland Nat'l Bank,* 112 Md.App. 20, 34, 684 A.2d 32, 39 (1996).

*Wells v. Chevy Chase Bank,* 363 Md. 232, 250–51, 768 A.2d 620 (2001).

ABC Imaging asserts that, unless the payments were made in the honest belief that they were for salary, the exclusion should not apply. Therefore, it argues, because the payments could not have been made in the honest belief that the inflated amounts were due, the sums paid were not salary. As we shall note, *infra,* the reported cases do not support that position.

As the keystone of its argument, ABC Imaging, citing various provisions of the Maryland Code, asks us to define "salary" as "compensation due," or "contracted and agreed upon by the employer and employee," definitions that cannot include funds "accidentally or erroneously paid to an employee." *See* Md.Code Ann., Lab. & Empl. §§ 3–401(e), 3–501, 10–101(g) (1999 Repl.Vol. & 2002 Supp.) (all defining "wage"); *see also* former Md. Ann.Code art. 100, § 94 (Repl.Vol.1985) (repealed by Acts 1991, ch. 8, § 1, effective Oct. 1, 1991 and replaced with Md. Ann.Code, Lab. & Empl. Article).

ABC Imaging argues that because Miller expressly contracted for an annual salary of $29,000, any amount erroneously delivered to him had no relationship to the amount of

contracted salary. It posits that the overpayment cannot reasonably be considered to be salary and, therefore, is not excluded from coverage. There is no doubt that ABC Imaging did not "knowingly" make the overpayment to Miller. Thus, it argues, Miller's dishonesty was not in the creation of the overpayments, but rather in his retention of the funds with the knowledge that he was not entitled to the excess payments.

In asserting its position in support of the exclusion, Travelers directs us to several cases, of similar factual import, which have sustained application of the exclusion. Our research has led us to no reported Maryland case; thus, we have resorted to cases decided in several of our sister states and by the federal judiciary. A majority of those courts have held that the same, or similar, policy language is unambiguous and excludes coverage when the only financial benefit gained by the dishonest employee was additional salary or commissions to which the employee was not entitled.

In *Resolution Trust Corp. v. Fidelity & Deposit Co. of Md.*, 205 F.3d 615 (3d Cir.2000), employees of a lending institution earned a salary bonus based upon the closing of a substantial loan transaction which, in the fullness of time, was discovered to have been fraudulent. In discussing a fidelity bond exclusion that was virtually the same in wording as the exclusion here being considered, the Third Circuit Court of Appeals noted

"[A]ttempts to limit the exclusion to financial benefits [such as salaries and commissions] earned in the normal course of employment have been rejected. The words 'earned in the normal course of employment' do not modify the enumerated exclusions that precede them, but are intended to include in the list of excluded benefits other benefits typically earned by employees."

*Id.* at 647 (quoting Foster, *et al.*, *supra*, 24 TORTS & INS. L.J. at 789). The court concluded that recovery of the fraudulently obtained bonuses was precluded by the exclusion, noting that "the 'earned in the course of employment' language is descrip-

tive of the character of the payment ... rather than the frequency with which the payment is received or the timing of its receipt." *Id.* at 648.

Other courts have reached the same conclusion as to the effect of the "salary" component of the exclusion. Among those cases is *Hartford Acc. & Indem. Ins. Co. v. Washington Nat'l. Ins. Co.*, 638 F.Supp. 78 (N.D.Ill.1986), which involved a claim against a fidelity bond containing the standard exclusion language. The claim arose when it was determined that two employees of the insured had conceived, and implemented, a scheme whereby inflated sales of life insurance policies resulted in payment to them of excessive commissions. In denying coverage based upon the exclusion, the District Court observed that

> all types of commissions and salaries are excluded from indemnity coverage, even commissions and salaries which have not been earned in the normal course of employment. More precisely, all courts to speak on the matter have found the industry-wide definition of "dishonest and fraudulent acts" to be unambiguous; that definition excludes recovery for losses resulting from an employee's intent to obtain a financial benefit for himself from commissions.... Any sort of commission benefit is exempt from fidelity coverage, even unearned commissions.

*Id.* at 83.

We find the rulings of other courts to be consistent in the denial of coverage when the dishonesty involved the receipt of unearned salaries or commissions. Among those are *Resolution Trust Corp. v. Fidelity & Deposit Co., supra*, 205 F.3d at 649 (3rd Cir.2000) (stating that the " 'earned in the course of employment' language is descriptive of the character of the payment at issue"); *Municipal Sec., Inc. v. Insurance Co. of N. Am.*, 829 F.2d 7 (6th Cir.1987) (per curiam) (affirming summary judgment in favor of the defendant insurance company because the employee sought only to enhance her regular commissions); *Auburn Ford Lincoln Mercury, Inc. v. Universal Underwriters Ins. Co.*, 967 F.Supp. 475 (M.D.Ala.)

(rejecting the insured plaintiff's argument that the dishonest employee would not have received the additional commissions "in the normal course of his employment") *aff'd,* 130 F.3d 444 (11th Cir.1997); *Benchmark Crafters, Inc. v. Northwestern Nat'l Ins. Co.,* 363 N.W.2d 89, 91 (Minn.Ct.App.1985) (reversing verdict in favor of insured where it was "uncontroverted that [the dishonest employee] did not gain anything except his regular salary").

Appellant refers us to *Klyn v. Travelers Indem. Co.,* 273 A.D.2d 931, 709 N.Y.S.2d 780 (2000), wherein the Supreme Court of New York, Appellate Division, reviewed contract language similar to that at issue here. In *Klyn,* the plaintiff's "comptroller embezzled funds from a payroll account over which he had sole control by secretly and fraudulently paying himself unauthorized and excessive salary, commissions and bonuses." *Id.* at 781. In rejecting Traveler's argument that recovery was barred under the policy provision excluding "salaries, commissions, fees, bonuses, . . . or other benefits earned in the normal course of employment," based upon the plaintiff's allegations that it did not knowingly make the payments to the comptroller as compensation for his employment, the court held:

> "[W]here the employer does not knowingly pay funds to its employee under the belief that the funds have been honestly earned, but is instead unaware of the employee's receipt of the funds or pays the lost funds for some purpose other than the employee's compensation, the employee has committed pure embezzlement which is recoverable under the [policy]."

*Id.* (quoting *Federal Deposit Ins. Corp. v. St. Paul Fire & Mar. Ins. Co.,* 738 F.Supp. 1146, 1160 (M.D.Tenn.1990), *mod. on other grounds,* 942 F.2d 1032 (6th Cir.1991)). ABC Imaging contends that *Klyn* supports its argument that payment, whether legitimately due or not, must be knowingly paid by the employer under the belief that it was due. Here, Traveler's contends, and we agree, that unlike Klyn, the additional monies paid to Miller in his paychecks were not the result of an overt dishonest act by Miller, but the result of an error by

ABC Imaging or its agent, substituting the weekly pay rate for the hourly rate.

We are also aware of a contrary result in *Cincinnati Ins. Co. v. Tuscaloosa County Parking & Transit Auth.*, 827 So.2d 765 (Ala.2002), a case involving employee embezzlement. When the dishonesty was discovered, the insured made a claim under a fidelity bond containing the standard exclusion, as in the instant case. After determining that the language of the exclusion was not ambiguous, the Supreme Court of Alabama resorted to standard dictionary definitions of "salary" and "earned," and held that because the embezzled funds were not earned, the loss was covered. *Id.* at 768. The Alabama court opted for what is clearly the minority view of the exclusion and stated: "The parties cite cases that are not binding on this Court. Some are consistent with our holding; some are not relevant...." *Id.* (internal footnotes omitted).

We hold, therefore, that a fidelity bond containing the standard industry exclusion, extant in the policy before us, clearly and unambiguously excludes from coverage the acts of an employee who fraudulently or dishonestly obtains salary or commissions.

Therefore, we find no error and shall affirm.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**