893 A.2d 645

Richard A. MUNDEY

v.

ERIE INSURANCE GROUP, et al.

No. 2069, Sept. Term, 2004.

Court of Special Appeals of Maryland.

March 1, 2006.

Michael J. Schreyer (Seidman & Schreyer, LLC, on brief), Waldorf, for appellant.

Anne K. Howard (Budow & Noble, PC, on brief), Bethesda, for appellee.

Panel MURPHY, C.J., SHARER and RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.

SHARER, J.

In this insurance coverage case, appellant, Richard A. Mundey, Jr., challenges the Circuit Court for Prince George's County's declaratory judgment order finding that appellee, Erie Insurance Exchange, did not owe him uninsured motorist benefits.

Appellant presents two issues for our review, which we have slightly rephrased as follows:

1. Whether the trial court erred in determining that appellant was not a "resident" of his parents' household for purposes of their automobile insurance policy.

2. Whether the trial court erred in finding that the automobile insurance policy's uninsured motorist provisions do not violate Maryland public policy.

Finding no error, we shall affirm the judgment of the circuit court.

## FACTUAL and PROCEDURAL BACKGROUND

On January 17, 2002, appellant, then 21 years old, was seriously injured while a passenger in a vehicle driven by his girlfriend, Amber Rose Burgess, who lost control of her vehicle and hit a tree. Ms. Burgess was found to be underinsured, having a Maryland Automobile Insurance Fund ("MAIF") policy providing only the statutory minimum coverage of $20,000.[1]

---

1. It is undisputed that appellant's damages exceeded $20,000.

Appellant filed a complaint in the Circuit Court for Prince George's County against Ms. Burgess, on September 18, 2002, seeking damages caused by her negligence. The complaint was amended on January 21, 2003, to include a declaratory judgment count against appellant's parents' automobile insurer, Erie Insurance Exchange ("Erie"), to determine if the Erie policy provided uninsured motorist coverage to appellant. Ms. Burgess's insurer, MAIF, paid the $20,000 policy limit, and appellant dismissed the count against Burgess, on March 11, 2003.

The Erie "Pioneer Family Auto Insurance Policy" purchased by appellant's parents provided policy limits of $250,000. The policy's uninsured/underinsured provision, at issue in this appeal, provides, in relevant part, as follows:

### UNINSURED/UNDERINSURED MOTORISTS COVERAGE

\* \* \*

### OUR PROMISE

We will pay damages for bodily injury and property damage that the law entitles **you** or **your** legal representative to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle.**

Damages must result from a motor vehicle accident arising out of the ownership or use of the **uninsured motor vehicle** or **underinsured motor vehicle** as a motor vehicle and involve:

1.  bodily injury to **you** or others **we** protect.

\* \* \*

### OTHERS WE PROTECT

1.  Any **relative.**

"Relative" is defined in the policy's definitions section:

**"relative"** means a **resident** of **your** household who is:

1.  a person related to **you** by blood, marriage or adoption, or

2. a ward or any other person under 21 years old in **your** care.

**"resident"** means a person who physically lives with **you** in **your** household. **Your** unmarried, unemancipated children under age 24 attending school full-time, living away from home will be considered **residents** of **your** household.[2]

(Emphasis in original).

The declaratory judgment action came on for trial on August 26, 2004. Neither party called live witnesses; rather, each proffered evidence from which the circuit court could have found the following: On or about February 14, 2001, appellant, then 20 years old, was arrested and incarcerated for failure to pay a court-ordered fine. Appellant's parents, Richard A. Mundey, Sr. and Sharon Mundey, agreed to post his bail if he would agree to, *inter alia,* move out of their home in Lusby, Maryland, and into his grandmother's home in Waldorf, Maryland. It was further agreed that appellant would have to get a job and "get his act together" before he could move back into his parents' home.[3]

Upon the posting of bail by his parents, appellant was released from jail and moved into the home of his grandmother, Shirley Sterling, in Waldorf. Shortly thereafter appellant got a job in Waldorf; first at Oak Ridge Construction Company and then at Damon's Restaurant. Approximately one month after he moved in with his grandmother appellant obtained his driving learner's permit.[4] Appellant was not, at any time relevant to the issues in this case, enrolled in college.

---

2. Appellant states in his brief that "there were no material facts in dispute," thus the parties proceeded by proffer. We believe that there were factual disputes as to appellant's "residence," which the court resolved.

3. The requirement to "get his act together" was not defined, but was understood to include his abstinence from drugs and alcohol.

4. Appellant neither obtained automobile insurance for himself nor notified Erie that he had begun driving on a learner's permit.

Appellant lived with his grandmother in Waldorf for the 11 months preceding the accident. During that time he visited his parents' home approximately four to six times. He spent the night at their house on two occasions—Thanksgiving and Christmas night. On those occasions, appellant slept on an extra bed in his younger brother's room, as his former bedroom had been converted to other family use.

At his grandmother's home, appellant had his own bedroom and was free to use the entire house, and the telephone. Appellant ate his meals with his grandmother and, when he was not at work, he either watched television or spent time with his girlfriend at his grandmother's house. In December 2001, appellant's father denied appellant's request to move back into the family home.

Except for his pay record at Damon's Restaurant, appellant continued to use his parents' Lusby address as his home address. Although appellant never filed for a change of address in Lusby, his mother either brought his mail when she visited her mother, or mailed it to appellant at the Waldorf address.

After hearing the proffers and arguments of counsel, the circuit court issued an opinion from the bench providing, in relevant part:

It appears to me that the definitions used in Erie's policy are not void against public policy, but are in fact logical, clear, and stated in plain language, sufficient to put all policyholders on notice of the extent of risk that this contract is intended to cover. The temporary residence of the [appellant] at his grandmother's home was temporary based on the limits placed by the homeowners who are the insureds under this policy. That is it was entirely up to his parents, the named insured homeowners, to determine how long that temporary residence would continue.

The policy anticipates that issue in its specific statement regarding full-time students living away from home who are unemancipated children under age 24 . . .

*      *      *

Here we have a young man who was emancipated absolutely. He was over 18. He was living and working on his own. He was not dependent for any purpose for his parents, and therefore could not even be considered an unemancipated child over 18 ... Only a temporary residence for school purposes for an unemancipated child between the ages of 18 and 24 would allow that person to still be continued as a member of the household. I see nothing void against public policy in this.

We have, in addition, the intention declared by the parents that he was not to be considered a member of the household in any number of ways. One, they forwarded his mail to him at the other location. Two, he was supposed to be self-supporting at another location. Three, they did not notify the insurance company of his driving on his learner's permit because they were not permitting him to use their vehicles.

All of those intentions clarify the intention that he not be considered a resident of the household at the time of this incident. It is sad, it is tragic, but it is the law, and I see nothing in public policy or in the statutory language, or in any of the appellate decisions, to suggest otherwise.

The circuit court's oral opinion was followed by a declaratory judgment order, filed on October 19, 2004. The order declared that the relevant policy provisions did not violate public policy and that, because appellant was not physically living in his parents' household for the 11 months prior to the accident, he was "not an insured by definition under the policy and does not qualify for uninsured or underinsured motorist coverage."

This timely appeal followed.

## STANDARD of REVIEW

■ Appellant posits that the standard of review should be *de novo* because the case was tried without a jury and there is no question of fact. For this proposition appellant cites

*Gleneagles, Inc. v. Hanks,* 156 Md.App. 543, 550, 847 A.2d 520 (2004), *aff'd* 385 Md. 492, 869 A.2d 852 (2005), where we said:

> Ordinarily, a decision of a circuit court regarding the grant or denial of injunctive relief will not be disturbed on appeal absent an abuse of discretion. If, however, the decision is based on a ruling of law the trial court must "exercise its discretion in accordance with correct legal standards." There being no dispute of fact, we shall review the issue presented on the basis of legal error.

(citations omitted).

As we have noted, the instant case presents an element of fact finding, as well as legal interpretation of the insurance contract.

In *ABC Imaging of Washington, Inc. v. The Travelers Indem. Co. of America,* 150 Md.App. 390, 397, 820 A.2d 628, *cert. denied,* 376 Md. 50, 827 A.2d 112 (2003), we stated, "[t]he interpretation of a written contract is ordinarily a question of law for the court and, therefore, is subject to *de novo* review by an appellate court." (quoting *Wells v. Chevy Chase Bank,* 363 Md. 232, 250–51, 768 A.2d 620 (2001)).

Therefore, as to the *de novo* aspect of our review, we shall adhere to the strictures of Md. Rule 8–131(c)(2004), which provides:

> (c) **Action tried without a jury.** When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

Otherwise, we shall review the trial court's contract interpretation for legal error.

*1.  Whether the trial court erred in determining that appellant was not a "resident" of his parents' household for purposes of their automobile insurance policy.*

■ Appellant argues that the circuit court erred in determining that he did not qualify as an insured under the terms of the uninsured/underinsured provisions of his parents' Erie automobile insurance policy.

In *ABC Imaging, supra,* 150 Md.App. at 396, 820 A.2d 628, we also said that "An insurance policy is a contract between the insurer and the insured. In construing an insurance contract, we look to the rulings of this Court and the Court of Appeals, which, in *Kendall v. Nationwide Insur. Co.,* 348 Md. 157, 165–66, 702 A.2d 767, (1997), declared":

> "Under Maryland law, when deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself. Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer. Rather, following the rule applicable to the construction of contracts generally, we hold that the intention of the parties is to be ascertained if reasonably possible from the policy as a whole."

(citations omitted). Therefore, "[o]ur construction of an insurance policy is guided by the well-established principles applicable to the construction of contracts in general." *Mut. Fire Ins. Co. of Calvert County v. Ackerman,* 162 Md.App. 1, 5, 872 A.2d 110 (2005).

"In determining the meaning of contractual language, Maryland courts have long adhered to the principle of the objective interpretation of contracts. Under the objective interpretation principle, where the language employed in a contract is unambiguous, a court shall give effect to its plain meaning and there is no need for further construction by the court." *Id.* at 397, 872 A.2d 110 (citations ommitted) (quoting *Wells v. Chevy Chase Bank, supra,* 363 Md. at 250–51, 768 A.2d 620).

In the case *sub judice* appellant challenges Erie's definition of resident. The policy's "Definitions" section sets forth:

**"resident"** means a person who physically lives with **you** in **your** household. **Your** unmarried, unemancipated children

under age 24 attending school full-time, living away from home will be considered **residents** of **your** household.

■ It is the definition of "resident" that is dispositive of the issue presented. Appellant argues, first, that the court adopted a restricted definition of residence, and, next, that the court failed to consider a totality of the circumstances test that has been endorsed in earlier Maryland cases. *Forbes v. Harleysville Mut. Ins. Co.*, 322 Md. 689, 589 A.2d 944 (1991) (whether a spouse who has left the family home is still a "resident of the same household."). The totality of the circumstances test emphasizes "that residence under '[a] common roof is not the controlling element.' It is rather a conclusion based on the aggregate details of the living arrangements of the parties." *Id.* at 705–06, 589 A.2d 944 (quoting *Davenport v. Aetna Cas. & Sur. Co.*, 144 Ga.App. 474, 241 S.E.2d 593, 594 (1978)).

Appellant relies on *Forbes, supra,* and *Willis v. Allstate Ins. Co.*, 88 Md.App. 21, 591 A.2d 896 (1991). Hence, we shall discuss each in turn.

Carol Forbes was killed, and her children injured, while passengers in an uninsured motor vehicle, as a result of the negligence of the driver. *Forbes, supra,* 322 Md. at 692, 589 A.2d 944. At the time, Carol Forbes was living separate from her husband, Robin Forbes, who was insured by Harleysville Mutual Insurance Company. *Id.* The policy, which included uninsured motorist coverage, insured a family vehicle co-owned by Carol and Robin. *Id.* at 693, 589 A.2d 944. Harleysville denied coverage to Carol Forbes under the uninsured motorist provision of the policy on the basis that she was not an insured. *Id.* at 701, 589 A.2d 944. That question turned, ultimately, on whether Carol Forbes, in view of the marital separation, was a family member as defined by the policy.

The Court of Appeals adopted a totality of the circumstances test and held that Carol Forbes's temporary absence from the family home did not preclude her status as a family member. *Id.* at 708, 589 A.2d 944. Thus, the Court ruled, she was a covered person under the policy. *Id.*

We view the facts of *Forbes* as more compelling than the facts of the case before us. Carol Forbes had been living apart from her husband for only about a month and one half; no divorce litigation had been filed; she had not changed her address for any significant purposes (e.g., drivers license, voting registration); her current lease was month-to-month; she was a co-owner of the insured family vehicle; and her name continued to be listed on the declarations page of the policy. *Id.* On those facts, the Court determined that the separation was not permanent and that she remained as a family member for purposes of the insurance contract.

In *Willis,* we were called upon to interpret a policy that spoke, not to who was covered, but to who was excluded from coverage. 88 Md.App. at 23, 591 A.2d 896. There, Amanda Willis, a young child, drowned in the swimming pool at the home of her grandparents, where she was living with her mother and siblings. *Id.* at 23–24, 591 A.2d 896. The issue was whether Amanda's mother was a "resident relative" for the purpose of invoking the exclusion. *Id.* at 27, 591 A.2d 896. The plaintiff's burden in *Willis* was the opposite of appellant's burden in the instant case. Here, appellant, to be covered, must prove residence in his parents' home. Payge Willis, to the contrary, was required to prove non-residence in order to be covered. Writing for this Court, Judge Alpert quoted from *Hamilton v. State Farm Mut. Auto. Ins. Co.,* 364 So.2d 215, 218 (La.App.1978):

> Once all the facts are marshaled, and it is made to appear that the marshaled facts are without dispute, then the ultimate conclusion as to residency becomes a question of law, i.e., whether such facts disclose residency of a particular place as a matter of law and with the meaning of the policy of insurance in question.

*Willis, supra,* 88 Md.App. at 27, 591 A.2d 896.

We pointed out that Ms. Willis had abandoned her previous home (in Ohio); moved all of her personal possessions with her to Maryland; placed some of the personal property in her parents' home, including major appliances; contributed finan-

cially to the family; and exhibited a clear intent to remain indefinitely. *Id.* at 28–29, 591 A.2d 896.

Not only do we find the facts of *Willis* to be inapposite, as we have noted, the policy provision there at issue was one of exclusion, not coverage. We quoted favorably from *Couch on Insurance*, 2d (Rev. ed.) § 44A:92, at 127–28 (1981):

It is well established that a provision exempting a compensation insurer from liability for injuries to persons living on the insured's premises or members of his household is valid, on the basis that it prevents collusion between an injured person and blood relatives or members of [the] insured's household.

*Willis, supra,* 88 Md.App. at 27, 591 A.2d 896.

Appellant urges us to consider Richard's "intent to return" to his parents' home as bearing on his status as a current resident. The concept of factoring intent into a determination of residency was rejected by this Court in *Willis,* when we said that "[t]he Court in *Peninsula Ins. Co. [v. Knight,* 254 Md. 461, 255 A.2d 55 (1969) ], however, implicitly rejected the consideration of whether there was any intent to permanently establish residence." *Willis,* 88 Md.App. at 30, 591 A.2d 896.

Therefore, we find neither *Forbes* nor *Willis* to be controlling of our decision. We reiterate that Richard had been excluded from the family home for nearly one year; that he had been denied permission to return; that his room had been converted to other use; and that he visited only sporadically and spent only two nights there. In contrast, he spent nearly all of his non-working time at the home of his grandmother; had his own room there; took his meals there; and enjoyed the privilege of inviting guests. We are also aware that, during the 11 month period, Richard was involved in another traffic incident and that he gave the Waldorf address to the investigating police officer.

Having marshaled the facts, we cannot but conclude that the trial court was correct in its finding that, as a matter of fact, Richard was not a "resident" of the home of his parents as

anticipated by the policy. We believe that appellant conflates residency with domicile.

According to the plain meaning of the policy, appellant would qualify as a "resident" if (1) he physically lives in his parents' household, or (2) he is under the age of 24 and attends school full-time. The undisputed evidence before the circuit court clearly established that appellant failed to meet either definition of "resident" because he did not physically live in his parents home, and did not attend college.

The circuit court, in its declaratory judgment order, specifically stated:

5. The relevant insurance policy provisions are clear and unambiguous. The policy clearly provides that in order to qualify for uninsured or underinsured motorist coverage, persons other than the named insured must be relatives of the named insured *and* must physically live in the named insured's household. In that [appellant] was not physically living in the household of Sharon and Richard A. Mundey, Sr., he is not an insured by definition under the policy and does not qualify for uninsured or underinsured motorist coverage.

(Emphasis in original).

We agree with the circuit court that the policy language is clear and unambiguous. Giving effect to the policy's plain meaning, we find that there is no need for further construction by the court.[5]

*2. Whether the trial court erred in finding that the automobile insurance policy's uninsured motorist provisions do not violate Maryland public policy.*

Appellant contends that "resident," as defined in Erie's policy, limits the statutorily required uninsured/underinsured

---

5. The record does not disclose whether Richard's grandmother, with whom he resided, had an automobile insurance policy with UM coverage. Therefore, we express no opinion as to whether, assuming a similar policy with a similar definition of "relative," coverage would be available to him.

motorist coverage and constitutes an impermissible exclusion from coverage, thus violating the public policy goals of Md. Code Ann., Ins. § 19–509 (Repl.Vol.2002). We disagree.

Although "Maryland's uninsured motorist statute explicitly permits only two exclusions from uninsured motorist coverage: the 'owned-but-insured' exclusion and the 'named driver' exclusion," [6] *Young v. Allstate Ins. Co.*, 120 Md.App. 216, 227, 706 A.2d 650 (1998), the provision at issue here neither limits the mandatory coverage nor constitutes an exclusion.

Section 19–509(c) of the Insurance article sets forth the required uninsured/underinsured motorist coverage:

(c) *Coverage required.*—In addition to any other coverage required by this subtitle, each motor vehicle liability insurance policy issued, sold, or delivered in the State after July 1, 1975, shall contain coverage for damages, subject to the policy limits, that:

(1) the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle; and

(2) a surviving relative of the insured, who is described in § 3–904 of the Courts Article, is entitled to recover from the

---

**6.** The permissible exclusions are contained in Md.Code Ins. § 19–509(f) (2002 Repl.Vol.):

(f) *Exclusions.*—An insurer may exclude from the uninsured motorist coverage required by this section benefits for:

(1) the named insured or a family member of the named insured who resides in the named insured's household for an injury that occurs when the named insured or family member is occupying or is struck as a pedestrian by an uninsured motor vehicle that is owned by the named insured or an immediate family member of the named insured who resides in the named insured's household; and

(2) the named insured, a family member of the named insured who resides in the named insured's household, and any other individual who as other applicable motor vehicle insurance for an injury that occurs when the named insured, family member, or other individual is occupying or is struck as a pedestrian by the insured motor vehicle while the motor vehicle is operated or used by an individual who is excluded from coverage under § 27–606 of this article.

owner or operator of an uninsured motor vehicle because the insured died as the result of a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle.

A reading of Erie's "uninsured/underinsured motorists coverage" provisions indicates that they provide the coverage required by § 19–509(c) and do not, as appellant argues, attempt to "limit the mandatory [uninsured/underinsured] coverage to the 'named insured.'"[7]

To reiterate, the relevant provisions of Erie's uninsured/underinsured motorists coverage provide:

**OUR PROMISE**

We will pay damages for bodily injury and property damage that the law entitles **you** or **your** legal representative to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle.**

Damages must result from a motor vehicle accident arising out of the ownership or use of the **uninsured motor vehicle** or **underinsured motor vehicle** as a motor vehicle and involve:

1. bodily injury to **you** or others **we** protect.

\* \* \*

**OTHERS WE PROTECT**

1. Any **relative.**

(Emphasis in original). "Relative" is defined in the policy's definitions section:

**"relative"** means a **resident** of **your** household who is:

1. a person related to **you** by blood, marriage or adoption, or

2. a ward or any other person under 21 years old in **your** care.

---

7. "Named insured" is defined in Md.Code Ins. § 19–501(d)(2002 Repl. Vol.) as "the person denominated in the declarations in a motor vehicle liability insurance policy." Here, the named insureds are appellant's parents, Richard A. Mundey, Sr. and Sharon Mundey.

"**resident**" means a person who physically lives with **you** in **your** household. **Your** unmarried, unemancipated children under age 24 attending school full-time, living away from home will be considered **residents** of **your** household.

(Emphasis in original).

While, as discussed *supra,* appellant does not qualify as an insured under Erie's uninsured/underinsured motorist provisions, it cannot be argued that Erie's policy limits coverage to the "named insured." To the contrary, the Erie policy extends coverage to (1) named insureds, (2) the named insureds' unemancipated children under age 24 living away from home and attending school full-time, and (3) *all* relatives who physically reside with the named insureds. Thus, the uninsured/underinsured coverage provided by Erie complies with the required coverage mandated by the Insurance article and § 19–509(c) and does not violate public policy.

█ Similarly, Erie's definition of "resident" does not constitute an exclusion under the policy. "An exception or exclusion in a policy of insurance is a limitation of liability or a carving out of certain types of loss to which the coverage or protection of the policy does not apply." SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS vol. 17, § 49:111, 7 (RICHARD A. LORD ed., 4th ed.2000).

Although Erie's definition of "resident," taken together with its definition for "relative," effectively restricts coverage under the policy to "relatives" who physically live in the named insured's household and the named insured's "unmarried, unemancipated children under age 24 attending school full-time, living away from home," this Court has held that "policy provisions narrowing the insurer's liability in a manner not inconsistent with statutory requirements is valid and permissible." *Lord v. Maryland Auto. Ins. Fund,* 38 Md.App. 374, 377, 381 A.2d 23 (1977)(citing *Amalgamated Cas. Ins. v. Helms,* 239 Md. 529, 539, 212 A.2d 311 (1965)). We hold that narrowing coverage in this manner neither constitutes an exclusion nor conflicts with the applicable statutory provisions.

**460**

As such, we agree with the circuit court that "[t]he Erie policy and the provisions relevant to uninsured motorist coverage and the definitions of resident and relative set forth in the Erie insurance policy, do not violate public policy."

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED; COSTS ASSESSED TO APPELLANT.**