# United Services Automobile Association, Inc. v. Kevin and Roscoe A. Swann and Gary Dolderer

[749 A.2d 23]

No. 98-568

Present: Amestoy, C.J., Johnson and Skoglund, JJ., and Van Benthuysen, Supr. J., and Gibson, J. (Ret.), Specially Assigned

Opinion Filed January 28, 2000

*Douglas Richards* and *Tracy Kelly Shriver* of *Douglas Richards, P.C.*, Springfield, for Plaintiff-Appellee.

*Robert B. Luce* of *Downs Rachlin & Martin PLLC*, Burlington, for Defendant-Appellant Gary Dolderer.

**Amestoy, C.J.** Insurer United Services Automobile Association (USAA) sought a declaratory judgment from the Windham Superior Court to determine whether it is obligated to either defend or indemnify Kevin Swann, an adult child, under the terms of his parents' homeowner's policy, against a claim that Swann allegedly committed a tort. According to USAA, it has no duty to defend or indemnify Swann because the alleged tort occurred when Swann was working a seasonal job and living away from his parents' household. The court granted summary judgment to USAA, concluding that, under the circumstances, insurer had no duty to either defend or indemnify Swann. Defendant Gary Dolderer argues that the court erred in concluding that Swann was not entitled to coverage under the terms of his parents' homeowner's policy. We affirm.

## I. Facts

On April 9, 1996, defendant was seriously injured when he was struck in the head by Kevin Swann while photographing Swann performing an aerial ski jump maneuver in Vermont. Swann, an unmarried, only child, was in his early forties when the accident

occurred. His parents, Col. Roscoe and Raynina Swann, are named insureds under a USAA homeowner's policy which covers them and "residents of [Col. Swann's] household" in Temple Hills, Maryland. At the time of the accident, and for several years preceding it, Kevin Swann had come and gone from his parents' home to pursue seasonal employment. During the cold weather months, he lived in Vermont or New York ski lodges while working as a ski instructor. During the warm weather months (approximately Memorial Day through October), he lived in tent, or occasionally in a duplex apartment, in West Virginia while working as a white water rafting guide. He received mail at these locales.

In transition between his seasonal employment, Swann would spend approximately two to two-and-a-half months at his parents' home each year. He kept many of his possessions in his parents' basement. He always considered his parents' home his own and used their phone number and address for his vehicle and voter registrations, and driver's license. Swann's bank accounts were in Temple Hills, and he swore residence at his parents' home in a bankruptcy petition he filed months before the accident. His doctors were in Maryland. He participated in household activities while staying at his parents' home and paid a modest amount for room and board during the time he was there.

Defendant filed suit against Swann in November 1997, and USAA was promptly notified because Swann claimed that he was covered by his father's USAA homeowner's policy. USAA denied coverage to Swann, and in April 1998, filed a petition for declaratory judgment, arguing that it had no duty to defend or indemnify Swann under his father's policy because Swann was not a resident of his parents' household.[1] Defendant and Swann answered the petition. Subsequently, USAA moved for summary judgment. The court granted USAA's motion, concluding that, under Maryland law, Swann was not a resident of his parents' Temple Hills, Maryland, household at the time of the accident. This appeal followed.

## II. Discussion

The issue before us is whether the trial court was correct in determining that, under Maryland law, Swann was not a resident of

---

[1] USAA also argued that Swann was not covered because the policy's intentional acts and business pursuits exclusions precluded coverage. The trial court did not reach these arguments in granting USAA's motion, nor do we in our decision.

his parents' Temple Hills, Maryland, home at the time of the accident, and thus, whether the court appropriately granted USAA summary judgment. Neither party disputes that Maryland law controls this case.

"We review a motion for summary judgment under the same standard as the trial court: summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Bacon v. Lascelles*, 165 Vt. 214, 218, 678 A.2d 902, 905 (1996). In making this determination, we regard as true all allegations of the nonmoving party that are supported by admissible evidence, and we also give the nonmoving party the benefit of all reasonable doubts and inferences. See *Messier v. Metropolitan Life Ins. Co.*, 154 Vt. 406, 409, 578 A.2d 98, 99-100 (1990). Additionally, Maryland law has held that where — as here — the underlying facts are not in dispute, "'the ultimate conclusion as to residency becomes a question of law, i.e., whether such facts disclose residency of a particular place as a matter of law and within the meaning of the policy of insurance in question.'" *Willis v. Allstate Ins. Co.*, 591 A.2d 896, 899 (Md. Ct. Spec. App. 1991) (quoting *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 364 So. 2d 215, 218 (La. Ct. App. 1978)).

In reaching its decision, the court primarily relied on three Maryland cases and one Virginia case interpreting residency clauses in insurance policies, though it correctly recognized that none involved facts directly analogous to those of this case. In *Peninsula Insurance Co. v. Knight*, 255 A.2d 55 (Md. 1969), the court of appeals considered a policy that excluded claims against the insurer arising out of injury to persons related to the insured and residents of the insured's household. *Knight* involved a son — the policyholder — who had temporarily moved his family into his parents' home to be closer to his employment. His parents were injured in an accident and sued the son, who contended that the insurer should indemnify or defend him against his parents' claim. The court's residency determination turned on several factors: the son's family had moved all of its belongings into the attic; they lived in a bedroom in the house; they used the family kitchen and bathroom; and they did not buy their own groceries. The court held that because the son and his parents were residents of the same household, the exclusion provision applied and the insurer was not obligated to indemnify or defend him against his parents' claim. See *id.* at 63-64.

The court also relied on *Willis*, which dealt with a homeowner's liability policy that similarly excluded resident relatives from cover-

age. A granddaughter, who had moved with her mother into her insured grandparents' home, drowned in the grandparents' swimming pool. The girl's mother sued the grandparents, who in turn contended that their insurer was obligated to provide liability and medical coverage under their policy. In determining residency, the court considered the salient facts to include that the mother had abandoned her previous home, brought all her personal possessions with her, and had no intention to return to her prior residence. The court held that the granddaughter was a resident relative of her grandparents' home. See *Willis*, 591 A.2d at 901. Thus, the insurance policy's exclusion clause applied and the insurer had no duty to provide liability and medical coverage to the grandparents.

In *Forbes v. Harleysville Mutual Insurance Co.*, 589 A.2d 944 (Md. 1991), an automobile insurance policy that limited coverage to residents of insured's household was at issue. A wife, who had recently left her husband and moved out of the family home with their two children, was killed in a car accident. The husband sued his insurer for wrongful death benefits, but the insurer contended that the wife was not covered under the policy because she was not a resident of her husband's household at the time of the accident. The court concluded that the wife was a resident of her insured husband's household at the time of the accident because: the separation between the couple was not permanent, as no divorce discussions or proceedings had begun; the parties had only been separated for approximately one-and-a-half months prior to the accident; the wife had not changed her driver's license or voter registration to reflect her new address; and the lease on the dwelling she lived in after moving out of the family home was only on a month-to-month basis rather than for a longer term. Therefore, the court held that, under the policy, the insurer was liable for wrongful death benefits. See *id.* at 953.

Here, the court concluded, based on these three cases, that Maryland uses a "totality of the circumstances" test to measure residency status, considering such factors as: the abandonment of previous residence with no intent to return; the storage of belongings in the alleged residence; and the shared usage of common areas of the house. See, e.g., *id.* at 952 ("It is generally stated that residence under "'[a] common roof is not the controlling element.' It is rather a conclusion based on the aggregate details of the living arrangements of the parties.") (quoting *Davenport v. Aetna Cas. & Sur. Co.*, 241 S.E.2d 593, 594 (Ga. Ct. App. 1978)). The court identified the shared characteristics of residency, as used in the Maryland cases, to be

"physical presence within a common abode on reasonably regular basis at a reasonably recent time, regardless of whether the individual uses the address for various legal and practical purposes or subjectively considers it his home."

It then predicted that Maryland courts would approve the rationale adopted by the Supreme Court of Virginia in *Allstate Insurance Co. v. Patterson*, 344 S.E.2d 890 (Va. 1986). *Patterson* involved a twenty-six-year-old who was injured in a motorcycle accident. Prior to the accident, he had been living off-and-on for a few years at his motorcycle gang's clubhouses and with friends, all the while maintaining his bedroom at his parents' home, keeping the bulk of possessions there, using his parents' address on his official papers, subjectively considering it as his home, and, in fact living there approximately ten percent of the time before the accident. The court held that the son was not a resident of his parents' home. See *id.* at 893. According to the court, "while a person's intention to become a member of a particular household need not be coupled with continuous residence, the intention must be accompanied by a reasonable degree of regularity in the person's residential contacts with the household; casual, erratic contacts are not sufficient." *Id.*[2]

Based on these cases, the court concluded that Swann's attachment to his parents' household, given his transitional seasonal employment pattern, had been "very attenuated" by the time of the accident, and that he had not actually lived at his parents' home on a reasonably regular basis at a reasonably recent time before the accident. Moreover, it found none of the policy concerns evident in the other cases that would justify finding Maryland residency for Swann. See, e.g., *Forbes*, 589 A.2d at 951 (to avoid coverage exclusion of temporarily separated married couple); *Larimore v. American Ins. Co.*, 552 A.2d 889, 892 (Md. 1989) (to prevent creating large class of uninsured motorists through coverage exclusion interpretation).

Defendant contends that, by reading *Knight*, *Willis*, and *Forbes* together, the court ignored *Knight's* observation that the phrase

---

[2] Here, the court also noted *Auto-Owners Insurance Co. v. Harris*, 374 N.W.2d 795 (Minn. Ct. App. 1985), where a forty-five-year-old man used his parents' home as his mailing address and for his driver's license, vehicle registration, traffic tickets, and hunting license, and had moved into his parents' home, along with most of belongings. However, he did not sleep there. The *Harris* court upheld the trial court's conclusion that the man was not a resident of his parents' household and thus not covered under their homeowner's policy, stating that he "was not maintaining a continuous, significant presence at his parents' home before the date of the dog bite[,]" the incident at issue. *Id.* at 797.

"resident of the household" is interpreted more expansively when it is used to define a policy's scope of coverage, as in *Forbes*, than when used in a provision excluding coverage, as in *Knight* and *Willis*. Defendant asserts that, absent a more informative definition, the phrase "resident of your household," as used in USAA's policy, must be inclusively construed consistent with an extension of liability coverage.

It is true that a conclusion of residency may benefit the insurer where coverage can be denied because of a provision that excludes residents of households. See, e.g., *Knight*, 255 A.2d at 64; *Willis*, 591 A.2d at 901. Conversely, a conclusion of residency may benefit an insured where coverage is provided to residents of households. See, e.g., *Forbes*, 589 A.2d at 953. However, the court's task is to construe a residency clause "in the context of [the] facts" before it. *Knight*, 255 A.2d at 56. USAA accurately notes that Maryland has not adopted a rule that the provisions of an insurance policy are to be construed against the insurer. See *Willis*, 591 A.2d at 901. But even accepting defendant's contention that homeowner's policies extending coverage should be broadly interpreted, we are unable to conclude that a Maryland court making a fact-specific inquiry of the "'aggregate details of the living arrangements[,]'" see *Forbes*, 589 A.2d at 952 (quoting *Davenport*, 241 S.E.2d at 594), would conclude that Swann was a resident of his parents' household.

Swann is a forty-two-year-old man with a transitory, seasonal employment pattern who made infrequent visits to his parents' home for short periods of time during the several years preceding the accident. This distinguishes the instant case from *Knight, Willis,* and *Forbes*, irrespective of whether this is construed as an inclusion or exclusion case. In *Knight* and *Willis*, the parties in question were physically living in the homes at issue when the respective incidents occurred. In *Forbes*, the claimant's wife — the mother of his two children — had lived in the family home for a number of years prior to the accident. Although she did not physically live at the claimant's home at the time of the accident, the couple had only recently separated, and no change in the legal status of their marriage had occurred.

In contrast to each of these cases, Swann neither lived at his parents' home at the time of the accident nor for a substantial period of time prior to the accident. We conclude that a reasonable construction of USAA's policy cannot lead to residency coverage because there was no "reasonable degree of regularity in [Swann's] residential contacts with the household." *Patterson*, 344 S.E.2d at 893.

Defendant also points out that USAA's policy expressly provides for coverage when a resident of the household is "temporarily residing" at another location, thus distinguishing between a "resident" of the household and a "regular resident" of the household. Defendant argues that these clauses would be surplusage if it is determined that Swann is not a resident of his parents' home. We find defendant's argument unpersuasive because it ignores the fact that, to be insured under his father's policy, Swann had to be "a resident of [Col. Swann's] household."[3] Swann was not, in the first instance, a resident of his parents' home in Maryland. Thus, any possible distinction between a "resident" and a "regular resident" is immaterial.

Finally, we agree with the court's determination that no policy concerns exist here that would justify a conclusion that Swann was a resident of his parents' home. Maryland has no mandatory homeowner's coverage statute intended to protect third parties who are injured, as it does for uninsured motorists who injure others. Thus, despite defendant's argument that Maryland rejects the notion of a "floating resident," *Knight*, 255 A.2d at 64, there are no analogous policy concerns evident here requiring a liberal construction "'to assure financial compensation to the innocent victims[,]'" *Forbes*, 589 A.2d at 948 (quoting *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Gartleman*, 416 A.2d 734, 737 (Md. 1980)), of ski-related accidents by tortfeasors who have no homeowner's insurance. Nor do the facts of this case involve a marital separation where absence of a spouse from the insured household may require consideration of additional factors. See *id.* at 951.

We express no opinion on whether a similar holding would be appropriate in other situations, such as a college student who returns to his parents' home during holidays and summers or an emancipated adult living with his parents. We conclude that, under the facts of this case, the trial court was correct in determining that Swann's attachment to his parents' household was so attenuated that, under Maryland law, he was not a resident of his parents' household entitled to coverage under their homeowner's policy.

*Affirmed.*

---

[3] Although USAA's policy does not define the terms "resident" or "regular resident" in its policy, it does define "insured location" to mean "[a]ny part of a premises: (1) not owned by an insured; and (2) where an *insured* is temporarily residing." (Emphasis added.)