914 A.2d 1167

Richard A. MUNDEY

v.

ERIE INSURANCE GROUP, et al.

No. 28 Sept. Term, 2006.

Court of Appeals of Maryland.

Jan. 16, 2007.

**658**

Michael J. Schreyer (Seidman & Schreyer, L.L.C., James Farmer, Farmer & Pyles, all on brief), Waldorf, MD, for petitioner.

Anne K. Howard (Budow & Noble, P.C., on brief), Bethesda, MD, for respondents.

John B. Bratt, Donald Daneman, P.A., Baltimore, MD, brief of amicus curiae of Maryland Trial Lawyers Ass'n.

Argued before Bell, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

GREENE, Judge.

On January 17, 2002, petitioner, Richard A. Mundey, Jr. ("Mundey"), age 21, sustained serious injuries as a result of an auto collision that occurred while he was the front-seat passenger in a vehicle driven by Amber Rose Burgess ("Burgess"). At the time of the accident, Burgess was insured under a Maryland Automobile Insurance Fund (MAIF) policy which provided the minimum statutory liability coverage of $20,000. Mundey filed a complaint against Burgess in the Circuit Court for Prince George's County, seeking damages, in excess of the MAIF policy limits, for injuries caused by Burgess's negligence.

The complaint was amended to add a declaratory judgment count against Mundey's parents' insurer, respondent, Erie Insurance Group ("Erie"), to determine if Erie's uninsured/underinsured ("UM") motorist endorsement insured Mundey, in light of his living arrangements, at the time of the accident.

In that regard, Mundey sought a declaration that the UM endorsement in the Erie policy covered damages that he sustained as a result of the motor vehicle collision.

The negligence claim against Burgess was settled for $20,000 and that count was subsequently dismissed. As to the declaratory judgment count, the parties entered into a stipulation as to the facts with regard to Mundey's residence. The trial court ruled in favor of Erie, finding that Mundey was not entitled to coverage under Erie's policy. Mundey noted an appeal to the Court of Special Appeals. The Court of Special Appeals affirmed the judgment of the trial court. *Mundey v. Erie Ins. Group,* 167 Md.App. 444, 893 A.2d 645 (2006). Thereafter, Mundey filed a petition for writ of certiorari seeking review of the judgment of the Court of Special Appeals. We granted the petition.[1] *Mundey v. Erie Ins. Group,* 393 Md. 245, 900 A.2d 751 (2006). We hold that Mundey is not entitled to recover under his parents' uninsured motorist endorsement because he was not a resident of their household or otherwise insured under the automobile liability insurance policy in question.

## FACTUAL AND PROCEDURAL BACKGROUND

We adopt the facts as stated by Judge Frederick Sharer, writing for a panel of the Court of Special Appeals in this case:

The Erie "Pioneer Family Auto Insurance Policy" purchased by [petitioner's] parents provided policy limits of $250,000. The policy's uninsured/underinsured provision, at issue in this appeal, provides, in relevant part, as follows:

**UNINSURED/UNDERINSURED MOTORISTS COVERAGE**

---

1. Petitioner presents the following questions for our review:

 Is Erie's limitation on coverage of "resident" family members invalid because it is not authorized by the motor vehicle insurance statutes?

 2. Did the policy's definition of "resident" exclude Mundey from coverage during a temporary absence from his parents', the "named insured's," home?

\* \* \*

**OUR PROMISE**

We will pay damages for bodily injury and property damage that the law entitles **you** or **your** legal representative to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle.** Damages must result from a motor vehicle accident arising out of the ownership or use of the **uninsured motor vehicle** or **underinsured motor vehicle** as a motor vehicle and involve:

 1. bodily injury to you or others we protect.

\* \* \*

**OTHERS WE PROTECT**

 1. Any **relative.**

"Relative" is defined in the policy's definitions section:

 **"relative"** means a **resident** of **your** household who is:

 1. a person related to **you** by blood, marriage or adoption, or

 2. a ward or any other person under 21 years old in **your** care.

 **"resident"** means a person who physically lives with **you** in **your** household. **Your** unmarried, unemancipated children under age 24 attending school full-time, living away from home will be considered **residents** of **your** household.

(Emphasis in original.)

·The declaratory judgment action came on for trial on August 26, 2004. Neither party called live witnesses; rather, each proffered evidence from which the Circuit Court could have found the following: On or about February 14, 2001, [petitioner], then 20 years old, was arrested and incarcerated for failure to pay a court-ordered fine. [Petitioner's] parents, Richard A. Mundey, Sr. and Sharon Mundey, agreed to post his bail if he would agree to, *inter alia,* move out of their home in Lusby, Maryland, and into his grandmother's home in Waldorf, Maryland. It was further agreed that [petitioner]

would have to get a job and "get his act together" before he could move back into his parents' home.

Upon the posting of bail by his parents,[petitioner] was released from jail and moved into the home of his grandmother, Shirley Sterling, in Waldorf. Shortly thereafter [petitioner] got a job in Waldorf; first at Oak Ridge Construction Company and then at Damon's Restaurant. Approximately one month after he moved in with his grandmother [petitioner] obtained his driving learner's permit. [Petitioner] was not, at any time relevant to the issues in this case, enrolled in college.

[Petitioner] lived with his grandmother in Waldorf for the 11 months preceding the accident. During that time he visited his parents' home approximately four to six times. He spent the night at their house on two occasions-Thanksgiving and Christmas night. On those occasions, [petitioner] slept on an extra bed in his younger brother's room, as his former bedroom had been converted to other family use.

At his grandmother's home, [petitioner] had his own bedroom and was free to use the entire house, and the telephone. [Petitioner] ate his meals with his grandmother and, when he was not at work, he either watched television or spent time with his girlfriend at his grandmother's house. In December 2001, [petitioner's] father denied [petitioner's] request to move back into the family home.

Except for his pay record at Damon's Restaurant, [petitioner] continued to use his parents' Lusby address as his home address. Although [petitioner] never filed for a change of address in Lusby, his mother either brought his mail when she visited her mother, or mailed it to [petitioner] at the Waldorf address.

After hearing the proffers and arguments of counsel, the Circuit Court issued an opinion from the bench providing, in relevant part:

It appears to me that the definitions used in Erie's policy are not void against public policy, but are in fact logical, clear, and stated in plain language, sufficient to put all policyholders on notice of the extent of risk that this con-

tract is intended to cover. The temporary residence of the [petitioner] at his grandmother's home was temporary based on the limits placed by the homeowners who are the insureds under this policy. That is it was entirely up to his parents, the named insured homeowners, to determine how long that temporary residence would continue.

The policy anticipates that issue in its specific statement regarding full-time students living away from home who are unemancipated children under age 24. . . .

\* \* \*

Here we have a young man who was emancipated absolutely. He was over 18. He was living and working on his own. He was not dependent for any purpose for his parents, and therefore could not even be considered an unemancipated child over 18 . . . . Only a temporary residence for school purposes for an unemancipated child between the ages of 18 and 24 would allow that person to still be continued as a member of the household. I see nothing void against public policy in this.

. We have, in addition, the intention declared by the parents that he was not to be considered a member of the household in any number of ways. One, they forwarded his mail to him at the other location. Two, he was supposed to be self-supporting at another location. Three, they did not notify the insurance company of his driving on his learner's permit because they were not permitting him to use their vehicles.

All of those intentions clarify the intention that he not be considered a resident of the household at the time of this incident. It is sad, it is tragic, but it is the law, and I see nothing in public policy or in the statutory language, or in any of the appellate decisions, to suggest otherwise.

The Circuit Court's oral opinion was followed by a declaratory judgment order, filed on October 19, 2004. The order declared that the relevant policy provisions did not violate public policy and that, because [petitioner] was not physically living in his parents' household for the 11 months prior to the

accident, he was 'not an insured by definition under the policy and does not qualify for uninsured or underinsured motorist coverage.' *Mundey,* 167 Md.App. at 447–50, 893 A.2d at 646–48 (alterations added) (footnotes omitted).

## DISCUSSION

### A.

■ We turn first to Maryland's Motor Vehicle Insurance Law and our interpretation of the uninsured motorist provisions. Petitioner contends that Erie narrowed the required coverage, without any statutory authority, by inserting into the common declaration, what is in petitioner's view, an unduly restrictive definition of "resident." Petitioner posits that the policy requirement that "residents" physically live in the "named insured's" household is invalid and illegal and further that Maryland's Motor Vehicle Insurance Laws are to be liberally construed so as to provide coverage for Mundey. In order to determine whether Mundey is entitled to collect under the uninsured motorist provision of his parents' automobile liability insurance policy, we must interpret Md.Code (1997, 2006 Repl. Vol.), § 19–509 of the Insurance Article,[2] the

---

2. Specifically at issue is Md.Code (1997, 2006 Repl. Vol.), § 19–509 of the Insurance Article, which was in force at the time of the collision. Section 19–509 provides:

(a) In this section, "uninsured motor vehicle" means a motor vehicle:
(1) the ownership, maintenance, or use of which has resulted in the bodily injury or death of an insured; and
(2) for which the sum of the limits of liability under all valid and collectible liability insurance policies, bonds, and securities applicable to bodily injury or death:
(i) is less than the amount of coverage provided under this section; or
(ii) has been reduced by payment to other persons of claims arising from the same occurrence to an amount less than the amount of coverage provided under this section.
(b) The uninsured motorist coverage required by this section does not apply to a motor vehicle liability insurance policy that insures a motor vehicle that:
(1) is not subject to registration under § 13–402 of the Transportation Article because it is not driven on a highway; or

(2) is exempt from registration under § 13–402(c)(10) of the Transportation Article.

(c) In addition to any other coverage required by this subtitle, each motor vehicle liability insurance policy issued, sold, or delivered in the State after July 1, 1975, shall contain coverage for damages, subject to the policy limits, that:

(1) the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle; and

(2) a surviving relative of the insured, who is described in § 3–904 of the Courts Article, is entitled to recover from the owner or operator of an uninsured motor vehicle because the insured died as the result of a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle.

(d) The uninsured motorist coverage required by this section shall be in the form and subject to the conditions that the Commissioner approves.

(e)(1) The uninsured motorist coverage contained in a motor vehicle liability insurance policy:

(i) shall at least equal:

1. the amounts required by Title 17 of the Transportation Article; and

2. the coverage provided to a qualified person under Title 20, Subtitle 6 of this article; and

(ii) may not exceed the amount of liability coverage provided under the policy.

(2) Unless waived in accordance with § 19–510 of this subtitle, the amount of uninsured motorist coverage provided under a private passenger motor vehicle liability insurance policy shall equal the amount of liability coverage provided under the policy.

(f) An insurer may exclude from the uninsured motorist coverage required by this section benefits for:

(1) the named insured or a family member of the named insured who resides in the named insured's household for an injury that occurs when the named insured or family member is occupying or is struck as a pedestrian by an uninsured motor vehicle that is owned by the named insured or an immediate family member of the named insured who resides in the named insured's household; and

(2) the named insured, a family member of the named insured who resides in the named insured's household, and any other individual who has other applicable motor vehicle insurance for an injury that occurs when the named insured, family member, or other individual is occupying or is struck as a pedestrian by the insured motor vehicle while the motor vehicle is operated or used by an individual who is excluded from coverage under § 27–606 of this article.

(g) The limit of liability for an insurer that provides uninsured motorist coverage under this section is the amount of that coverage less the amount paid to the insured, that exhausts any applicable liability insurance policies, bonds, and securities, on behalf of any person that may be held liable for the bodily injuries or death of the insured.

UM Endorsement and subsequent definitions of "relative" and "resident." Our interpretation must conform to the well-settled principles of statutory construction. As this Court recently said in *Walzer v. Osborne,* 395 Md. 563, 571–573, 911 A.2d 427, 431–433 (2006),

> '[t]he cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature.' *Mayor & Town Council of Oakland v. Mayor & Town Council of Mt. Lake Park,* 392 Md. 301, 316, 896 A.2d 1036, 1045 (2006); *Chow v. State,* 393 Md. 431, 443, 903 A.2d 388, 395 (2006) (citations omitted); *see also Johnson v. Mayor of Balt. City,* 387 Md. 1, 11, 874 A.2d 439, 445 (2005); *Moore v. State,* 388 Md. 446, 452, 879 A.2d 1111, 1114 (2005); *O'Connor v. Balt. County,* 382 Md. 102, 113, 854 A.2d 1191, 1198 (2004); *Mayor & City Council of Balt. v. Chase,* 360 Md. 121, 128, 756 A.2d 987, 991 (2000).

\* \* \*

> If the language of the statute is ambiguous, however, then 'courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of [the] enactment [under consideration].' *Fraternal Order of Police v. Mehrling,* 343 Md.

---

(h)(1) A policy that, as its primary purpose, provides coverage in excess of other valid and collectible insurance or qualified self-insurance may include the uninsured motorist coverage provided for in this section.

(2) The uninsured motorist coverage required by this section is primary to any right to recovery from the Maryland Automobile Insurance Fund under Title 20, Subtitle 6 of this article.

(i) An endorsement or provision that protects the insured against damages caused by an uninsured motor vehicle that is contained in a policy issued and delivered in the State is deemed to cover damages caused by a motor vehicle insured by a liability insurer that is insolvent or otherwise unable to pay claims to the same extent and in the same manner as if the damages were caused by an uninsured motor vehicle.

(j) A provision in a motor vehicle liability insurance policy issued after July 1, 1975, about coverage for damages sustained by the insured as a result of the operation of an uninsured motor vehicle that requires a dispute between the insured and the insurer to be submitted to binding arbitration is prohibited and is of no legal effect.

155, 174, 680 A.2d 1052, 1062 (1996) (quoting *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75, 517 A.2d 730, 732 (1986)). We have said that there is 'an ambiguity within [a] statute' when there exist 'two or more reasonable alternative interpretations of the statute.' *Chow*, 393 Md. at 444, 903 A.2d at 395 (citations omitted). When a statute can be interpreted in more than one way, 'the job of this Court is to resolve that ambiguity in light of the legislative intent, using all the resources and tools of statutory construction at our disposal.' *Id.*

> If the true legislative intent cannot readily be determined from the statutory language alone, however, we may, and often must, resort to other recognized indicia—among other things, the structure of the statute, including its title; how the statute relates to other laws; the legislative history, including the derivation of the statute, comments and explanations regarding it by authoritative sources during the legislative process, and amendments proposed or added to it; the general purpose behind the statute; and the relative rationality and legal effect of various competing constructions.

*Witte*, 369 Md. at 525–26, 801 A.2d at 165. In construing a statute, '[w]e avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense.' *Blake v. State*, 395 Md. 213, 224, 909 A.2d 1020, 1026 (2006) (citing *Gwin v. MVA*, 385 Md. 440, 462, 869 A.2d 822, 835 (2005)); *see Frost v. State*, 336 Md. 125, 137, 647 A.2d 106, 112 (1994).

In addition, 'the meaning of the plainest language is controlled by the context in which it appears.' *State v. Pagano*, 341 Md. 129, 133, 669 A.2d 1339, 1341 (1996) (citations omitted). As this Court has stated,

> [b]ecause it is part of the context, related statutes or a statutory scheme that fairly bears on the fundamental issue of legislative purpose or goal must also be considered. Thus, not only are we required to interpret the statute as a whole, but, if appropriate, in the context of the entire statutory scheme of which it is a part.

*Gordon Family P'ship v. Gar On Jer,* 348 Md. 129, 138, 702 A.2d 753, 757 (1997) (citations omitted).

The history of Maryland's Uninsured Motorist Statute, as summarized by the Court in *State Farm Mut. Auto. Ins. Co. v. DeHaan,* 393 Md. 163, 900 A.2d 208 (2006), informs our discussion. In *DeHaan,* we noted that,

[t]he Legislature first enacted the uninsured motorist statute as Chapter 73 of the Acts of 1972. This section was part of a large bill which also created the Maryland Automobile Insurance Fund (MAIF), the bill provided:

'(c) In addition to any other coverage required by this subtitle, every policy of motor vehicle liability insurance issued, sold, or delivered in this State after January 1, 1973 MAY contain coverage, in at least the amounts required under Section 7–101 of the Article 66½ of the Annotated Code of Maryland (1970 Replacement Volume and 1972 Supplement), for damages which the **insured** is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle . . . .'

The statute was later amended and codified as Maryland Code (1957, 1972 Repl. Vol., 1978 Cum. Supp.), Art 48A, § 541(c).

The enactment of this section complied with one of the recommendations made in a Report of the Special Committee on No–Fault Insurance dated January 31, 1972. The committee's recommendation stated: 'To complement the first party coverage and to protect more fully a Maryland driver, the second bill requires the driver to carry uninsured motorist coverage in the event he suffers damage caused by an out-of-state driver not protected by liability insurance.'

*DeHaan,* 393 Md. at 171–72, 900 A.2d at 213.

As one commentator has noted, "the Maryland Uninsured Motorist Endorsement specifically establishes three classes of persons' ability to recover under the policy." Andrew Jan-

quitto, *Uninsured Motorist Coverage in Maryland*, 21 U. Balt. L.Rev. 171, 221 (1992). Of the three classes of persons, this case concerns only what has been labeled "clause 1 insureds:"

'Clause 1 insureds' consists of the named insured, the named insured's spouse, and members of the named insured's household.... The coverage granted to ... [them] is personal and comprehensive: it does not run with the insured vehicle. Rather the policy covers clause 1 insureds in a variety of situations: when they are occupying a vehicle under the policy, when they are occupying most other vehicles, when they are riding bicycles, and when they are pedestrians.

*Id.* We have stated that the phrase "resident of the same household" is not ambiguous, but rather "[t]he words themselves are clear, simple, and in general use." *Peninsula Ins. Co. v. Knight*, 254 Md. 461, 477, 255 A.2d 55, 63 (1969)(holding that the insured was a member of his parents' household and that their claim against him was precluded by an exclusionary clause in a policy of insurance issued by Peninsula. Further acknowledging that "[a] 'resident' of a household may have a status ranging from temporary to permanent but ... he is nonetheless a resident" in light of a number of factors including his usage of the living space and the storage location of his belongings.) Petitioner urges this Court to consider him a "clause 1 insured" under his parents' automobile liability policy at the time of the accident and therefore entitled to coverage. For the reasons discussed *infra*, we disagree.

The essence of this appeal is our interpretation of subsection (c)(1) of § 19–509. Subsection (c)(1), requires that

each motor vehicle liability insurance policy issued, sold, or delivered in the State ..., shall contain coverage for damages, subject to the policy limits, that: (1) the *insured* is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle....

(Emphasis added). The statute does not define the word "insured.[3]" Because the Legislature failed to define "insured," we must examine what the Legislature intended "insured" to mean in light "of the Legislature's general purpose and in context of the statute as a whole." *Nesbit v. Gov't Employees Ins. Co.*, 382 Md. 65, 76, 854 A.2d 879, 885 (2004) (citation omitted). Further,

'[w]e have repeatedly stated that where the [L]egislature has chosen not to define a term used in a statute, that term should, ... be given its ordinary and natural meaning.' By not defining these words in the statute, there is nothing to indicate the [L]egislature 'intended to express a technical meaning.'

*DeJarnette v. Fed. Kemper Ins. Co.*, 299 Md. 708, 717, 475 A.2d 454, 459 (1984) (citations omitted).

Petitioner expands upon an argument presented by commentator, Andrew Janquitto, in a treatise on Maryland motor vehicle law. Mr. Janquitto urges that "[b]ecause the UM statute does not indicate who must be insured, the only guidance is a negative implication from the exclusions. In other words, if certain persons such as family members, can be excluded under some specified circumstances, they must be included in all other circumstances." Andrew Janquitto, Maryland Motor Vehicle Insurance § 8.9(A)(1) (2006 Supplement). Petitioner further expands upon Mr. Janquitto's argument by citing specific statutes from which, Petitioner contends, this Court can imply the meaning of the word "insured."

Petitioner contends that the Legislature intended "insured" to include all family members of the "named insured," including those who are temporarily absent from the household. Accordingly, petitioner avers that Maryland's Motor Vehicle

---

**3.** According to Andrew Janquitto, the term "insured" is not defined because it was the intent of the Legislature to extend uninsured motorist coverage to the named insured's resident relatives and permissive users of the insured vehicle. Andrew Janquitto, *Uninsured Motorist Coverage in Maryland*, 21 U. Balt. L.Rev. 171, 220 (1992).

Insurance Laws do not authorize an exclusion for temporarily absent resident relatives. Further, petitioner asserts that had the General Assembly intended to give insurers permission to narrow the coverage in this way, it would have expressly included a provision to that effect in the original UM statute or, later, after this Court's interpretation of the term "resident" in *Forbes v. Harleysville Mut. Ins. Co.*, 322 Md. 689, 589 A.2d 944 (1991). Moreover, petitioner argues that the definition of "resident" contained within Erie's policy is invalid because it restricts the legislatively mandated coverage and, moreover, that the policy provisions are inconsistent with Maryland's UM statute and are thus invalid. Finding no explicit definition of "insured" within the UM statute, petitioner contends that this Court should look to the exclusions contained within the UM statute and elsewhere within the motor vehicle insurance scheme, and that these exclusions show by negative implication that the Legislature intended the term "insured" to include family members of the named insured that are temporarily absent from the household. Petitioner relies on several sections of the Insurance Article for this proposition. Specifically, petitioner cites § 19–505 and § 27–606 as instructive.

Pursuant to § 19–505, the personal injury protection (PIP) statute, automobile insurance companies that issue, sell, or deliver policies in Maryland must provide PIP coverage for "the first named insured, and any family member of the first named insured who resides in the first named insured's household." Md.Code (1997, 2006 Repl. Vol.), § 19–505(a)(1)(i) of the Insurance Article. Insurers are, however, permitted to exclude from coverage those persons enumerated in subsection (c)[4] of § 19–505. Petitioner contends that the exclusions

---

**4.** Subsection (c) of § 19–505 provides:

(c)(1) An insurer may exclude from the coverage described in this section benefits for:

(i) an individual, otherwise insured under the policy, who:

1. intentionally causes the motor vehicle accident resulting in the injury for which benefits are claimed;

allowed under subsection (c) are very limited, that, pursuant to § 19–505, Mundey should be provided PIP coverage, and that it can be concluded that the Legislature intended the word "insured" to mean all resident family members of the "named insured," whether temporarily absent or not.

Section 27–606 permits a family automobile to remain insured, instead of having the insurance policy canceled, by excluding from the insurance policy a member of the household whose driving record would have warranted a cancellation or non-renewal of the policy. Petitioner contends that the operative language in § 27–606 is "family members residing in the household of the excluded operator or user or vehicle owner." Md.Code (1997, 2006 Repl. Vol.), § 27–606 of the Insurance Article. Petitioner asserts that the policy issued by Erie exceeds the statutory authorized exclusions by seeking to exclude him from PIP and UM coverage while he was a passenger in a vehicle driven by a non-relative. Petitioner cites additional sections of the Insurance Code in support of his argument. Petitioner suggests that the intent of the Legislature is revealed by reading §§ 19–509 and 20–601 together. Here, petitioner contends that the operative language, "family who resides in the household," indicates the Legislature's intention to require insurers to cover family residents to the same extent that the state fund covers them, through MAIF.

---

2. is a nonresident of the State and is injured as a pedestrian in a motor vehicle accident that occurs outside of the State;

3. is injured in a motor vehicle accident while operating or voluntarily riding in a motor vehicle that the individual knows is stolen; or

4. is injured in a motor vehicle accident while committing a felony or while violating § 21–904 of the Transportation Article; or

(ii) the named insured or a family member of the named insured who resides in the named insured's household for an injury that occurs while the named insured or family member is occupying an uninsured motor vehicle owned by:

1. the named insured; or

2. an immediate family member of the named insured who resides in the named insured's household.

(2) In the case of motorcycles, an insurer may:

(i) exclude the economic loss benefits described in this section; or

(ii) offer the economic loss benefits with deductibles, options, or specific exclusions.

Finally, petitioner contends that the intent to include household residents in the term "insured" is revealed in various other sections including § 19–506, the waiver of PIP benefits; § 20–603, notice of claim for damages; § 27–601, notice for cancellation or non-renewal of a policy; §§ 27–604 and 27–605, both addressing premium increases.

In opposition, respondent contends that, at best, the group of persons who are to be provided uninsured/underinsured motorist coverage would be the named insured and his or her family members who reside in the named insured's household, but that there is no mandate for any other persons to be covered. Respondent argues that coverage need not be extended to a named insured's relatives who intend to move in with the named insured in the future or those who do not physically reside with the named insured.

We first address petitioner's contention that the exclusions contained within the UM statute and elsewhere within the motor vehicle insurance scheme show by negative implication that the Legislature intended the term "insured" to include all relatives of the named insured who are temporarily absent from the household. In *Johnson v. Nationwide Mut. Ins. Co.,* "[t]he question before us ... [was] whether § 19–509 of the Insurance Article require[d] an insurer to provide uninsured motorist coverage for the wrongful death of a person who was not an insured under the policy." 388 Md. 82, 86, 878 A.2d 615, 617 (2005). Jaedon Johnson, a minor, sought to recover under his mother's insurance policy for the death of his father, a man who was not a named insured under that policy, was not married to the policyholder, and did not live with the policyholder, arguing that § 19–509(c)(2) required the insurer to pay the benefits sought. As part of our analysis in that case, we considered the plain language of § 19–509(c)(1), noting that "[t]he words of the statute require each motor vehicle liability insurance policy to include coverage for that policy's insured for bodily injuries sustained by that policy's insured, in a motor vehicle accident involving the use of an uninsured motor vehicle." *Johnson,* 388 Md. at 89, 878 A.2d at 619 (emphasis in original). The minor argued that recovery under his moth-

er's policy was necessarily conditioned on his being a survivor of an insured under the statute. Finding his argument illogical, we opined that such an interpretation

> would mean that the [L]egislature was requiring every policy to provide uninsured motorist coverage to an unknown number of people, not named in the policy, who are related to (but not living with) someone who is protected by the policy, in the event that those unknown people should be involved in an accident with an uninsured motor vehicle.

*Id.* (alteration added).

■ Our interpretation of § 19–509(c)(1) and analysis of legislative intent as explicated in Johnson are instructive. Although the term "insured" is not defined, within the context of the uninsured motorist statute, its ordinary meaning is *covered or coverage at the time of the accident. See Johnson,* 388 Md. at 89, 878 A.2d at 619; *Forbes,* 322 Md. at 708, 589 A.2d at 953. It is our view that the Legislature intended for coverage to be extended to the insured motorist and all family members residing with the named insured. By contrast there may be situations where a family member of the named insured who resides with the named insured and is occupying an insured or uninsured motor vehicle or is struck as a pedestrian by an insured or uninsured motor vehicle that is owned by the named insured or an immediate family member or operated or used by an individual who is excluded from coverage under § 27–606 of the Insurance Article. In those situations, by virtue of statutorily-created exceptions, an insurer may exclude the injured family member from the benefits of uninsured motorist coverage. *See* § 19–509(f).

■ The case *sub judice* is not a case of exclusion, as an entire class of persons who are statutorily required to be covered are not being denied coverage. *Cf. Pa. Nat'l Mut. Cas. Ins. Co. v. Gartelman,* 288 Md. 151, 416 A.2d 734 (1980) (holding that the exclusion contained in the policy at issue in that case denied PIP coverage to a class of persons statutorily required to be covered and was consequently invalid and that as a result, the named insured was entitled to benefits under

the policy's PIP provision). This case is not a case of exclusion, rather it is a matter of determining if the Legislature contemplated that Mundey and similarly situated individuals should be covered under the UM statute. We are unpersuaded that the Legislature intended to require coverage for family members of the named insured who do not physically live with the named insured. We hold, therefore, that § 19-509 requires automobile liability insurance contracts to provide uninsured motorist coverage, at a minimum, to the named insured as well as any family members who reside with the named insured.

### B.

Petitioner argues that Erie's policy continued to provide UM coverage during Mundey's absence from his parents', the "named insured's," home. Thus, petitioner contends that the Court should apply *Forbes*, and conclude that Mundey was an insured under his parents' policy. Petitioner further argues that in *Forbes* this Court relied on the Supreme Court of Rhode Island's analysis in *Aetna Life & Cas. Co. v. Carrera*, 577 A.2d 980 (R.I.1990). According to Petitioner, in *Carrera*, in its analysis of "resident," that court considered intent to remain for more than a mere transitory period and intent to return to the residence within the reasonable foreseeable future. The Court of Special Appeals, in petitioner's view, failed to consider the intent element in its analysis of the case *sub judice*. Petitioner notes that temporary absences from one's household are frequent and that the application of narrow interpretations would result in there being no coverage during these temporary situations. Respondent asserts that the subject policy is unambiguous and further that this Court should enforce the policy as written. In turn, respondent discourages the application of *Forbes* in this context. As explained below, we disagree with petitioner's contention that his absence from his parents' home did not preclude him from UM coverage.

We turn first to our previous holding in *Kendall v. Nationwide Ins. Co.*, 348 Md. 157, 702 A.2d 767 (1997). In *Kendall*,

at issue was the proper construction of uninsured/underinsured motorist coverage provisions contained in an automobile liability insurance policy. In that case, petitioner argued that the insurance policy at issue was ambiguous. This Court stated that,

> [u]nder Maryland law, when deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself. 'Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer. Rather, following the rule applicable to the construction of contracts generally, we hold that the intention of the parties is to be ascertained if reasonably possible from the policy as a whole.'

*Kendall,* 348 Md. at 166, 702 A.2d at 771 (citations omitted). We conclude that the plain language of the policy in this case is unambiguous and clearly indicates who is covered by the policy. Coverage is provided for "relatives" who physically live in the named insured's household and the named insured's unemancipated children under twenty-four who live away from home, but attend school.[5] In this case, Erie was exposed to greater risk by insuring unemancipated children who live away from home. Our decision in *Amalgamated Cas. Ins. Co. v. Helms,* 239 Md. 529, 539, 212 A.2d 311, 318 (1965), allows for policy provisions that narrow the insurer's liability in a manner not inconsistent with statutory requirements. Likewise, an insurer may expand the scope of uninsured/underinsured coverage so long as the expansion is consistent with the statutory requirements.

We agree with respondent's contention that because the language of the residency clause contained in the policy is unambiguous and because it does not conflict with Maryland's Motor Vehicle Insurance Law, Mundey is not entitled to coverage. Furthermore, in our view, Mundey does not qualify

---

5. We agree with the Court of Special Appeals that "it cannot be argued that Erie's policy limits coverage to the 'named insured.'" *Mundey,* 167 Md.App. at 459, 893 A.2d at 653 (2006).

as a resident under the "totality of the circumstances" test set out in *Forbes*.

First, we look to the decisions of other jurisdictions that have interpreted similar residency clauses. In *Cotton States Mut. Ins. Co. v. McEachern*, 135 Ga.App. 628, 218 S.E.2d 645 (1975), the court was asked to analyze the policy language extending uninsured motorist protection to any relative of the named insured if a "resident of the same household." In that case, the insured's son was married and purchased a home nearby. The insured provided the down payment for the purchase of the home and, although the son paid most of his wife's expenses, the couple continued to take their meals at the insured's residence. The son's wife was injured by an unidentified driver who left the scene. The wife sought uninsured motorist coverage under the insured's policy for damages sustained. The court held that the named insured's son did not qualify as a "resident" of the named insured's household. The court noted that although financial support was an important factor in determining whether the insured's son and wife were members of the insured's household, there was no support for the son's contention that the insured's support extended the insured's household to include the son's new home.

In *Girrens v. Farm Bureau Mut. Ins. Co.*, 238 Kan. 670, 715 P.2d 389 (1986), the issue was whether a son was a "dependent person" under his father's automobile insurance policy. Following a motorcycle collision, the insured's son sought recovery of uninsured motorist coverage benefits. Specifically, the policy under review in that case provided uninsured coverage to "any dependent person whose legal residence is the household of the insured...." *Girrens*, 715 P.2d at 391. The insured's son argued that the term "dependent person" was ambiguous under the policy, and had to be construed to include the injured party. The court disagreed and found the term, as used in the policy, unambiguous. The court affirmed the trial court's judgment, which found in favor of the insurer. In so doing, the court approved the standard employed to determine if the son was a dependent, specifically, whether a

"substantial contribution required to provide the necessities of life" was made by his parents. *Girrens*, 715 P.2d at 393.

We find persuasive *United Serv. Auto. Ass'n v. Swann*, 170 Vt. 302, 749 A.2d 23, 26 (2000), which noted the "shared characteristics of residency ... to be 'physical presence within a common abode on [a] reasonably regular basis at a reasonably recent time, regardless of whether the individual uses the address for various legal and practical purposes or subjectively considers it his home.'" *Swann* involved the construction of a homeowner's insurance policy. The issue before the Court was whether, under Maryland law, Swann was a resident of his parent's home at the time of the accident. *Swann*, 749 A.2d at 24. Chief Judge Amestoy, writing for the court in *Swann*, predicted that "Maryland Courts would approve the rationale adopted by the Supreme Court of Virginia in *Allstate Insurance Co. v. Patterson*, 231 Va. 358, 344 S.E.2d 890 (1986)." *Swann*, 749 A.2d at 26. According to the court in *Patterson*, "while a person's intention to become a member of a particular household need not be coupled with continuous residence, the intention must be accompanied by a reasonable degree of regularity in the person's residential contacts with the household; casual, erratic contacts are not sufficient." *Patterson*, 344 S.E.2d at 893. As suggested, we agree with the *Patterson* rationale.

As discussed *infra*, this Court has, in other cases, interpreted residency clauses in insurance policies, though none involve facts identical to those of this case. Our decision in *Knight* is instructive insofar as it details the factors that the Court looks to when making a determination of residency. In *Knight*, we were asked "to construe ... an exclusionary clause in a policy of insurance issued by ... [Peninsula Insurance Company]." 254 Md. at 463, 255 A.2d at 56. In *Knight*, the Court was asked to construe the words "resident" and "household" as they were used in the insurance policy at issue. In that case, the insured moved out of his family home and into his parents' home. Subsequently, his parents were injured in an auto collision, and, later, sued their son to recover compensation for

their damages. The Court found that the insured was a resident of his parents' household at the time of the accident. In finding him a resident of his parents' home, the court noted several factors as important, including that the insured, "occupied one bedroom, not an apartment, ... did not buy and cook ... [his] own food," and all his belongings were in the attic. *Knight*, 254 Md. at 478, 255 A.2d at 63.

At issue in *Carrera* was whether Mark Read, who was killed by an uninsured motorist in an auto collision and was the son of the insured, Concetta Carrera, was a resident of the insured's household at the time of the accident. Carrera argued, *inter alia*, that the trial court in that case failed to consider decedent's intentions to return to the insured's household. That court agreed "that decedent's intention is pertinent to a determination of residence." *Carrera*, 577 A.2d at 984. The court held that

> [t]he meaning of the term 'residence' or 'resident' is a mixed question of law and fact. In order to determine if a person is a resident of a particular household, the court must consider whether in the totality of the circumstances that person maintains a physical presence in the household with intent to remain for more than a mere transitory period, or that person has a reasonably recent history of physical presence together with circumstances that manifest an intent to return to the residence within a reasonably foreseeable period.

*Carrera*, 577 A.2d at 985. Additionally, that court cited favorably Blacks Law Dictionary, 1176 (West 5th Ed. 1971), which noted that although

> 'domicile' and 'residence' are usually in the same place, they are frequently used as if they had the same meaning, but they are not identical terms, for a person may have two places of residence, as in the city and country, but only one domicile. Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home.

*Carrera,* 577 A.2d at 983. This Court has said that " '[t]he words reside or resident mean domicile unless a contrary intent is shown. A person may have several places of abode or dwelling, but he can have only one domicile at a time.' " *Oglesby v. Williams,* 372 Md. 360, 373, 812 A.2d 1061, 1068 (2002) (citations omitted). Further, we have defined "domicile" as " 'the place with which an individual has a settled connection for legal purposes and the place where a person has his true, fixed, permanent home, habitation and principal establishment, without any present intention of removing therefrom, and to which place he has, whenever he is absent, the intention of returning. The controlling factor in determining a person's domicile is his intent.' " *Id.* We caution conflating "domicile" with "residency" in this context, because in our view, this Court's domicile analysis places greater emphasis on "intent," and therefore is not the appropriate test for residency. The appropriate test for residency, in our view, is that elucidated in *Forbes,* as it requires more than mere intent to return to a place.

In *Forbes,* Carol Forbes was killed, and her children injured, in an automobile collision that occurred while they were riding as passengers in an uninsured's motor vehicle. The issue was whether Carol Forbes, who left the family home, was still a resident of that previous household. At the time of the accident, Carol Forbes was not living with her husband in the family home, instead she was living with the uninsured motorist. Carol Forbes's husband sought a declaratory judgment to establish that Harleysville Mutual Insurance Company, which had issued an automobile liability policy on a jointly titled family vehicle, was responsible for providing UM coverage under the uninsured motorist provision contained in the policy. This Court adopted a totality of the circumstances test to determine residency and held "under the circumstances, . . . that Carol Forbes was an 'insured' and a 'covered person' at the time of the accident." *Forbes,* 322 Md. at 709, 589 A.2d at 953. We considered the parties' marital status at the time of the accident, that no divorce discussions or proceedings had begun, the length of time of the separation, the address on

Carol Forbes' driver's license, her voter registration, as well as the temporary nature of her living arrangements. In holding that Carol Forbes was still a resident of the family household, notably, we did not explicitly consider her "intent to return."

Petitioner contends that in *Forbes,* the Court relied on *Carrera,* and that the Court of Special Appeals did not consider the *Forbes* Court's reliance and, as a result, misconstrued the law. The result, petitioner argues, was that the Court of Special Appeals placed excessive emphasis on the physical presence factor and trivialized evidence of Mundey's intent to return to his parents' household. We are unconvinced that the Court in *Forbes* relied on the rationale of Carrera to the extent suggested by Petitioner. *Forbes* cites *Carrera* for the principle that residence is " 'a conclusion based on the aggregate details of the living arrangements of the parties.' " *Forbes* 322 Md. at 705–06, 589 A.2d at 952, (*citing Davenport v. Aetna Casualty & Surety Co.,* 144 Ga.App. 474, 241 S.E.2d 593, 594 (1978); *Carrera,* 577 A.2d at 985). *Forbes* does not, however, directly adopt the rationale of *Carrera* nor does it explicitly factor intent to return into the residency analysis. In our view, the Court of Special Appeals appropriately analyzed the facts of *Forbes* and concluded that the "totality of the circumstances" test was applicable. As discussed *infra,* we agree and find nothing wrong with the Court of Special Appeals' application of the *Forbes* holding.

■■■ For purposes of this decision, we will assume that Mundey intended to return to his parents' home in Lusby, Maryland. We agree, however, with the Court of Special Appeals that "the facts of *Forbes* . . . [are] more compelling than the facts of the case . . . [*sub judice*]." *Mundey,* 167 Md.App. at 454, 893 A.2d at 650. In the case at bar, Mundey had been excluded from the family home for nearly one year and his parents denied his requests to return. Mundey had not contributed to the family expenses and his bedroom had been converted to other family use. Further, he visited infrequently, and spent only two nights at his parents' home

after moving into his grandmother's residence. In our view, even if Mundey intended to return to his parents' home, his visits were so infrequent that it cannot be argued that they occurred with any reasonable degree of regularity. Mundey's contacts with his parents' home were casual and erratic and, as a result, insufficient to support a conclusion of residency. His presence in his parents' household was neither continuous nor significant. Unlike his connection to his parents' home, Mundey spent a considerable amount of his leisure time at his grandmother's home; he had a room there, ate his meals there, and was free to invite guests. We are not presented with the question of whether Mundey was a resident of his grandmother's home, rather, the question is whether he was a resident of his parents' home. We disagree with petitioner's contention that the application of the *Forbes* "totality of the circumstances" test dictates a finding that Mundey was a resident of his parents' home, because, *inter alia,* his attachment to his parents' household was, in fact, attenuated. The Circuit Court, therefore, was correct in finding that Mundey was not physically living in his parents' household at the time of the accident, that he is not an insured, by definition, under the policy and that he does not qualify for uninsured or underinsured motorist coverage. We reiterate that we are not dealing with a situation in which a resident of a household is temporarily absent for employment related purposes or because of a planned vacation. In this case, Mundey was not a resident of his parents' household and therefore was not entitled to coverage. Moreover, a short term absence from a household by a resident does not, by itself, exclude that person from coverage. We limit the holding in this case to the particular facts of this case.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.**